PERKINS, POWELL & CO. *v.* PETERSON, administrator.

1. Where an owner of lands, by an instrument in writing, conveys to another "all of the timber and growing trees suitable for mill purposes, or for being manufactured into lumber, now upon all or any of the following lots, tracts, or parcels of lands," in a designated county, "known and described as follows: round timber in the first district of said county, lots numbers" 2 and 199, and in the sixth district lots 90 and 95; "boxed timber in the first district," lots 246, 293, 332, 333, 334; "the purchasers having the exclusive right to box the round timber and work the same for turpentine purposes;" with the stipulation that "this lease terminates and reverts back to the owner of the land in five years from the time the timber is commenced to be cut under this lease," the period of limitation in such a conveyance should be computed as to all the lands embraced therein from the time the lessee begins cutting the timber upon any one of the lots, although the lots do not together form one body of land, but some of them are situated in one portion of the county and some of them in another; there being nothing in the conveyance to indicate an intention by the parties that it should be treated as a separate lease to each lot or body of land, and to fix the duration of the lease as to each lot or tract at five years from the time the lessee begins cutting timber thereon.

2. Under such lease the "right" of the lessee "to box the round timber and work the same for turpentine purposes" ceases to exist at the expiration of five years from the time the lessee begins to cut the timber for sawmill purposes.

Argued November 11, 1899. — Decided February 28, 1900.

Complaint. Before Judge Bennet. Coffee superior court. March term, 1899.

*John C. McDonald, Quincey & McDonald,* and *E. P. Padgett & Son,* for plaintiffs in error.

*E. D. Graham* and *G. J. Holton & Son,* contra.

FISH, J. This case turns upon the proper construction of a lease contract entered into between Daniel Peterson and Charles Bewick Company on the 23d of May, 1889. By such instrument certain lots of land to which Daniel Peterson

held perfect titles were leased by him to Charles Bewick Company for sawmill purposes, the lease providing that the lessee should have the right to "all of the timbers and growing trees suitable for mill purposes, or for being manufactured into lumber," then "upon all or any of the following lots, tracts, or parcels of lands, situate, lying, and being in the county of Coffee and State aforesaid, known and described as follows: Round timber in the first district of said county, lots numbers" 2 and 199, and in the sixth district lots 90 and 95; "boxed timber in the first district of said county," lots 246, 293, 332, 333, and 334; "the purchasers having the exclusive right to box the round timber and work the same for turpentine purposes." With reference to the duration of the lease, the instrument contained the following clause: "and this lease terminates and reverts back to the owner of the land in five years from the time the timber is commenced to be cut under this lease." The lessee, Charles Bewick Company, assigned and conveyed the right to cut the timber described in the lease to the Bewick Lumber Company, and assigned to Lott & McLain the right to work the timber for turpentine purposes. Lott & McLain assigned the turpentine right or license to Lott & Perkins, and the latter firm assigned the same to Perkins, Powell & Co., the defendants in this case. At the trial it was agreed that "The Bewick Lumber Co., under [the] lease from Daniel Peterson, entered upon lots 332, 333, and 334, in the first district of Coffee county, in the fall of 1891 and the spring of 1892 and cut all of the merchantable sawmill timber growing thereon." On the 8th day of December, 1897, Perkins, Powell & Co. entered upon lots 90 and 95 in the sixth district of Coffee county, and "commenced boxing the pine timber for turpentine purposes," claiming the right to do so under and by virtue of the lease made by Daniel Peterson to Charles Bewick Company. Daniel Peterson died in 1896, and in January, 1898, Daniel Gaskin and John H. Peterson, the administrators upon his estate, brought their equitable petition in which they sought to enjoin Perkins, Powell & Co., "from boxing the timber upon" lots 90 and 95 in the sixth district of Coffee county, "and from working the same for turpentine purposes," and for the recovery of whatever damages the es-

tate which they represented had sustained by reason of the alleged trespasses which the defendants had already committed. When the case came on for final trial, Gaskin's name was stricken from the petition, he having been discharged as administrator, and the suit proceeded in the name of the remaining administrator, J. H. Peterson. After the evidence was all in, by agreement of the parties all dispute as to the facts of the case was eliminated, and the plaintiff agreed that if a verdict was found in his favor the defendants should have "the right to finish working the timber on these two lots for turpentine purposes, until the end of the season beginning in 1898 and ending in 1900;" it being further agreed that the timber on the two lots, at the time it was boxed by the defendants, "was worth the sum of six hundred dollars per lot for turpentine purposes, for three years, and that they boxed it at the time stated in the petition." "Upon motion of the plaintiff's counsel, the court instructed the jury to find a verdict in favor of the plaintiff, it being conceded that the court should direct a verdict one way or the other." The defendants made a motion for a new trial, which was overruled, and they excepted.

It is contended by the defendants, Perkins, Powell & Co., that the court erred in its construction of the lease, that is, in holding that the lease, as to all the lots embraced therein, terminated at the expiration of five years from the time that the Bewick Lumber Company entered upon and began to cut the timber upon any of the lots for sawmill purposes; the theory of the defendants being that "each of these lots was intended as a separate tract by the maker of the lease," and that the clause, "and this lease terminates and reverts back to the owner of the land in five years from the time the timber is commenced to be cut under this lease," means that the lease shall terminate, and terminate only, as to each lot in five years from the time of the beginning of the cutting of timber upon that particular lot. Another contention of the defendants is, that this clause of the contract is ambiguous, and that the court below "erred in refusing to allow the defendants to introduce oral testimony to explain that, under the terms of a lease like the one in controversy, it was the usual custom among turpentine operators to

have, where the lease contains language like that expressed in the lease in issue, the number of years stated in the lease within which to box and work the timber on each lot therein named." Again, the defendants contend that "In this case the exclusive right to box and work for turpentine purposes is in no way, nor could not in any way be construed to be, limited" by the above quoted limitation clause of the lease. We do not think that any of these contentions is sound. Upon the trial the defendants introduced the map of Coffee county, from which it appeared that the lots in the first district were located many miles from those in the sixth district. Suppose that "The two lots of land in question are situated at least seventeen or eighteen miles from the place where it is alleged that Bewick commenced to cut, and that these two lots are in no way adjacent to or even in the militia district where the cutting was done," does this show that it was the intention of the parties that the lease should, in reference to its duration, operate separately as to each lot which it covered, retaining its grip upon each lot until five years should expire from the time the lessee should begin to cut timber upon that particular lot ? We see nothing in the language of the lease to indicate that it should terminate by piecemeal; that the several lots should, or could, drop out of it at different times. Nor do we think that the clause, "this lease terminates and reverts back to the owner of the land in five years from the time the timber is commenced to be cut under this lease," is ambiguous. The lease describes and conveys the timber upon nine different lots, some of which are located in one part of the county and some in another. Immediately following the description of the timber included in the lease, we find the following stipulations: "the purchasers having the exclusive right to box the round timber and work the same for turpentine purposes, and it is stipulated and agreed between the parties that the seller has the right to use the timber on any of these lands for building and fencing purposes until it is cut; and this lease terminates and reverts back to the owner of the land in five years from the time the timber is commenced to be cut under this lease." As all the timber covered by the lease had just been mentioned and specified, it seems clear that the

words, "the timber," in the limitation clause, refer to all the timber included in the lease. Taken in the connection in which they are used, these two words gather in, group together, and treat as an entirety the timber upon all of the lots. "Round timber" was as much *"the timber,"* in the limitation clause, as was "boxed timber," and the described timber in the first district as the described timber in the sixth district. The words "the timber" being, as used, a unifying expression, binding together and making a unit of all the timber upon the nine lots mentioned in the lease, when the Bewick Lumber Company "commenced to . . cut" the timber upon any of the lots, it, within the meaning of the contract, "commenced to . . cut" the timber upon all of them. There is no room in the expression, "this lease terminates and reverts back to the owner of the land in five years from the time the timber is commenced to be cut," for an interpretation which would make the lease, at the expiration of such period, terminate as to one portion of the land and continue as to another portion thereof.

In this connection, the decision rendered in the case of *Baxter* v. *Mattox,* 106 *Ga.* 344, is directly in point. There it was held that, "Where a grantor conveys by deed 'all of the timber, wood, logs, and growing trees, suitable for sawmill purposes and being manufactured into lumber, now upon or that may hereafter grow upon all or any of the following lots or parcels of land,' (describing the same by giving the number of each and the district where located), which words in the conveyance are followed by a clause that 'this lease [is] to expire ten years from the time said [grantee] begins cutting said timber' from the lots of land mentioned, . . the period of limitation in such a conveyance should be computed as to the entire lands embraced in the deed from the time the grantee enters upon any one of the lots; there being nothing in the conveyance to indicate an intention by the parties that the instrument should be treated as a separate lease to each lot, and to limit the time of occupancy of any particular lot to a period of ten years from the date the grantee begins cutting the timber on such lot." It is true that it was not pretended in that case that the lots of land embraced in such conveyance did not lie in one body; while in

the present case it is perfectly clear that the lots covered by the lease do not lie in one tract. But as it is manifest, from the language of the instrument under consideration, that the timber upon all of the lots was treated by the parties as an entirety, it can make no difference whether all of the timber was situated upon one body of land, or some was located in one part of the county and some in another. The question is not how the timber was located—whether on one body of land, or on several different tracts, but how was it treated and dealt with by the parties to the contract. Was it, in the clause fixing the duration of the lease, treated as one body of timber, or were the different tracts dealt with separately? For the reasons stated, we think it is apparent that it was dealt with and treated as one entire body of timber. There is clear distinction between *Carmichael* v. *Brown*, 97 *Ga.* 486, and *Baxter* v. *Mattox*, supra. In the former case the lease was of all the "pine timber" on a given area of land, "for the full term of three years from the time the boxes are cut," and it was held that this language was ambiguous because susceptible of two different constructions, one being that the lessee would be entitled to three years enjoyment of each set of boxes cut, and the other that his period of enjoyment should be limited to three years from the time any of the trees were boxed. If that lease had stipulated that it should expire three years from the time the lessee began to cut boxes, it would have been unambiguous, and the term would have lasted for only three years from the time the first boxes were cut. In the latter case, as we have seen, the lease contract was to expire "ten years from the time said [grantee] begins cutting said timber." The phrase "begins cutting said timber," as used in the contract, could have but one meaning, and fixed as the starting-point, from which to reckon the duration of the lease as to all the lots embraced therein, the time when the lessee *began* to cut the timber, regardless of where he began. Accordingly it was held that there was no ambiguity in the contract, and that the period of ten years should be computed from the time the grantee actually began to cut any of the timber.

Judgment affirmed. All the Justices concurring.