BUD HALL, ET AL., v. EASTMAN, GARDINER & CO.

[43 South. Rep., 2.]

1. DEEDS. *Sales. Growing timber. Time to remove.*

A deed to the standing timber on several separate tracts of land, providing that it should remain in force as to each forty-acre tract until one year after the purchaser begins to cut thereon, requires the purchaser to begin cutting in a reasonable time after the sale, although it grants a right of way of unlimited duration over all the land for the removal of the timber therefrom and from the purchaser's adjacent lands.

2. SAME. *Reasonable time. How determined.*

What is a reasonable time for beginning the cutting of timber under such a deed is to be determined by the circumstances of the case.

FROM the chancery court of Simpson county.

HON. JAMES L. MCCASKILL, Chancellor.

Hall and others, the appellants, were complainants in the court below; Eastman, Gardiner & Company, a corporation, the appellee, was defendant there. From a decree sustaining a demurrer to the bill and dismissing the suit complainants appealed to the supreme court.

The bill of complaint charged that complainants were the owners of certain lands described therein, and more than five years before executed a deed conveying to defendant the timber standing thereon. The deed is set out in the opinion. The bill further charged that defendant had taken no steps toward cutting or removing the timber from the land; that complainants desired to put the premises in cultivation, but could not do so because of the timber standing thereon, and because of the refusal of defendant to remove it. Defendant claimed an unlimited time in which to remove the timber. Complainants claimed that, since no time limit was fixed in the deed for the

removal of the timber, defendant should remove same within a
reasonable time from the date of the conveyance or forfeit its
rights; that a reasonable time had elapsed; and that defend-
ant's timber rights had reverted to complainants. The bill
prayed for a cancellation of defendant's claim to the timber,
or, in the alternative, that the court should fix a time in the
future within which the timber should be removed.

*Longino, Willing & Wilson,* for appellants.

The overwhelming weight of authority supports the proposi-
tion that when a time limit is fixed in a deed within which the
timber must be removed, all timber remaining on the land at
the expiration of the time limit reverts to the grantors.
In *McComber* v. *Detroit, etc., R. R. Co.,* 108 Mich., 491, the
court held that, "If a landowner sells the timber on his land,
to be removed within a time specified, and the timber remains
uncut after the expiration of that time, it reverts to the owner
of the realty, but the timber which is cut within that time be-
comes the personal property of the licensee and remains such,
though it is not removed from the land within the time agreed
upon. Contracts containing similar provisions have been con-
strued in the courts in a number of the states, and the weight
of authority supports the defendant's contention that, as to
timber remaining uncut at the expiration of the time limit un-
der a contract, such as this, the title reverts to the owner of the
realty. *Pease* v. *Gibson,* 6 Me., 84; *Howard* v. *Lincoln,* 13
Me., 123; *Saltonstall* v. *Little,* 90 Pa. St., 422 (35 Am.
Rep., 683); *Utley* v. *Wilcox,* 59 Mich., 263; *Haskell* v.
*Ayres,* 32 Mich., 93 (35 Mich 89); *Gamble* v. *Gates,* 92
Mich., 510." In *Pease* v. *Gibson,* 6 Me., 81, the court held
that, "Where the owner of land sold by deed all the timber
trees standing thereon, and in the same deed gave to the vendee
two years within which to take off the timber, this was a sale of
only so much of the timber as the vendee might take off in the
two years, and that an entry by him after the period was a

trespass; and although after the expiration of the two years the land was sold to a stranger with a reservation in the deed of whatever rights the vendee of the timber might have, yet this reservation neither gave any new effect to the contract nor to any new license to the vendee."

In *Howard* v. *Lincoln,* 13 Me., 122, the court held that: "A sale of a certain description of standing timber trees, to be taken off within a specified time, was a sale only of so many of the trees specified as the vendee might take off in the time limited." In *Utley* v. *Wilcox Lumber Co.,* 59 Mich., 263, the court held as follows: "An agreement for removal within a fixed time limits operation of contract to timber cut and removed within the time specified." Upon a review of the contract in this case under which the plaintiff claimed the right to recover, and the acts of the parties in connection therewith, the court held that: "It clearly appears that it was the intention of the parties to said contract to limit the time in which the timber sold plaintiff was to be cut and removed, and that the sale was confined to such timber as he should cut and remove within the specified time. That the case comes directly within the previous decision of this court, and is ruled by said cases: *Monroe* v. *Bowen,* 25 Mich., 523; *Richards* v. *Tozer,* 27 Mich., 451; *Johnson* v. *Monroe,* 28 Mich., 3; *Haskell* v. *Ayres,* 32 Mich., 93.

In *Haskell* v. *Ayres,* 32 Mich., 93, the court held that: "A contract for the sale of all the pine timber on certain lands specified, at a given price per thousand feet, to be removed within three years from the date of the contract, conferred no authority to cut and remove the same after the expiration of the time specified, and conveyed no title to logs thereon, cut on said lands by third person." To the same effect, the court held in *Gamble* v. *Gates,* 92 Mich., 510, that: "A contract for the sale of all the white pine and Norway timber standing, lying or being on certain land, reserved the title in the vendor until

the purchase price was paid, and gave the vendee five years in which to cut and remove the timber, and provided that whatever timber remained upon the land after the limit of the aforesaid five years should revert and become the property of the vendor, and even if the conditions of the contract had otherwise been performed, all the timber remaining upon the land at the expiration of the five years, whether cut or uncut, reverted to the vendor." In *Pease* v. *Gibson,* 6 Me., 84, above referred to, the court said: "To admit the construction given by the defendant's counsel and consider such a permission as a sale of the trees, to be cut and carried away at the good pleasure of the purchaser, and without any reference to the limitation in point of time, specified in the permit, would be highly injurious in its consequences. It would deprive the owner of the land of the privilege of cultivating it and rendering it productive, thus occasioning public inconvenience and injury; and, in fact, it would amount to an indefinite permission. The purchaser, on this principal, might, by gradually cutting the trees and clearing them away, make room for a succeeding growth, and before he had removed the trees standing on the land at the time of receiving such a license or sale, others would grow to a sufficient size to be useful and valuable; and then the owner of the land would be completely deprived of all use of it. Principals leading to such consequences as we have mentioned cannot receive the sanction of the court." This was followed in *Howard* v. *Lincoln,* 13 Me., 122, both cases seeming to have directly involved in point.

In *Holton* v. *Goodrich,* 36 Vt., 18, there was a reservation of stone in a deed, with the privilege of taking it off "till" a certain day. The court said: "If the property was removed by that time, it belonged to the plaintiffs, but if not removed by that time, their right to it was gone. This seems to be the natural and obvious construction of the deed." See also note by the Reporter in *Irons* v. *Webb,* 32 Am. Rep., 193. In *Sal-*

*tonstall* v. *Little,* 90 Penn., 422. "K. conveyed to V. several tracts of land, reserving all the pine timber on said tracts, together with the privilege to cut, remove, take and carry away the same, on any part thereof, at any and all times; also the right of ingress and egress at any and all times for the space or term of twelve years from the date above written, for the purpose as aforesaid." Held, that the parties having fixed their own time for the removal of the timber, the right of entry, as well as the right to property, fell with the expiration of that time. The limit upon the right to enter was a limitation upon the exception itself. It was a reservation of the timber for twelve years, and no longer. After that time the trees remaining passed with the grant of the soil to which they were attached.

Where no time limit is fixed for the removal of timber, the timber must be removed within a reasonable time. In *Holt* v. *Stratton Mills,* 54 N. H., 109 (20 Am. Rep., 119), the owner of land conveyed the timber standing and lying thereon with license to the grantee to enter and remove the same. Held: That the grantee might enter within a reasonable time, but that if he did so afterwards, he was liable to trespass *quare clausum* for the entry, but not for the value of the trees. In *Heflin* v. *Bingham,* 56 Ala., 566 (28 Am. Rep., 776), Cook conveyed lands to Heflin, reserving the growing trees. He had previously orally sold the trees to Bingham, and received the purchase money therefor. Bingham entered upon the lands and erected buildings for the purpose of converting the trees into lumber, and was engaged in that business when Heflin purchased. In ejectment by Heflin against Bingham, held that "Bingham had the right, within a reasonable time after the sale of the trees to him, to enter upon the land and cut and remove them, but not to erect or occupy any buildings upon the land."

In the case of *Ferguson* v. *Arthur,* 128 Mich., 297, no limit was fixed for the removal of timber. In this case the court

held that the written contract being silent as to the time for the removal of the timber, the law implied that the grantee had a reasonable time only within which to remove the timber. *Mathews* v. *Mulvey,* 38 Minn., 342; *Howe* v. *Batchelder,* 49 N. H., 204.

In the case of *Mathews* v. *Mulvey,* the court very pertinently said: "When the right should expire the particular effect would be to divest the right in the timber, or at any rate to leave it a barren and unavailable right, for as the court said in the case of *King* v. *Merriman, supra,* it would be an anomaly in the law that one man should own standing timber on the land of another with no right to enter and cut and take it away." See also *Manufacturing Company* v. *Hobbs,* 128 N. C., 46.

In the case of *Gilmore* v. *Walker,* 12 Pick., 120, the court held that: "A general parol license by the owner of the land to cut and carry away wood growing (if available at all) must be acted on within a reasonable time, and must be considered as applying to the wood as *substantially* in the state of growth in which it is at the time of giving license. What is a reasonable time, the facts being agreed, is a question to be determined by the court. Such a license not acted upon within fifteen years was held to have become inoperative." In the case of *Magnetic Ore Co.* v. *Lumber Co.,* (Ala.) 27 L. R. A., 434, the contrary opinion was held. In this case the court held that failure to cut and remove timber within a reasonable time does not forfeit the title of the grantee in favor of a subsequent purchaser of the land. This opinion, however, is contrary to the great weight of authority. All the other states hold that where no time limit has been fixed in the deed, the law implies that the timber must be removed within a reasonable time, and that this is a question of fact which cannot be settled on demurrer. We alleged in the bill of complaint that a reasonable time had elapsed for the removal of the timber. This allegation in complainants' bill ought to have been challenged by an answer, not

by demurrer, and proof should have been taken upon that allegation. The deed in this case did not fix any time limit. The following provision occurs in the deed: "It is especially covenanted and agreed that as to each forty acre tract herein described and conveyed this deed shall continue and remain in force until the said Eastman, Gardiner & Company, their successors and assigns, commence to cut and lumber the same, and for one year thereafter, and then to become void and of no effect." According to the great weight of authority, appellee ought to have commenced to cut the timber from the lands conveyed in the deed within a reasonable time, and the allegation of complainant's bill that a reasonable time had elapsed not having been challenged by answer, the question as to the reasonableness of the time limit should not be raised by demurrer. In the case at bar, more than five years had elapsed from the execution of the deed conveying the timber to the date of filing the bill. This court has held, in the case of *Gex* v. *Dill,* 86 Miss., 10 (s.c., 38 South. Rep., 193), that two years was a reasonable time within which to commence operations under a turpentine lease in which no time limit was fixed. And in the opinion of the court in that case the following statements occur: "We cannot support the position that the lease is void as tending to create a perpetuity, in that it does not give the date when the right it grants shall begin and end. We have examined all the authorities given in the briefs of counsel. Under them we think the most that can be claimed, if it can be, is that the work must commence in a reasonable time; and in this case we think it did commence in a reasonable time. This record does not show a lapse of thirteen years as in cases cited, before the beginning, but not quite two years. This conclusion does not make it necessary to decide whether or not in this case the delay, to be unreasonable, must pass the period of the statute of limitations." This court seems committed by this opinion to the doctrine that the timber must be removed within a reason-

able time.  In this case also, the court held that it was not neces-
sary, in order to make the delay unreasonable, that the said
delay must pass the statute of limitations.  The question of
reasonableness or unreasonableness of the delay in cutting the
timber is a question of fact, upon which proof should have been
taken.

The question of what is a reasonable time is a question of
fact, which cannot be settled on demurrer, but the bill should
have been answered and proof taken as to whether or not a reas-
onable time had elapsed.  As stated above the bill in this case
alleged that, as a matter of fact, a reasonable time had elapsed
within which the timber ought to have been removed, and inas-
much as the appellee admitted this allegation by its demurrer,
and did not challenge it by an answer, we submit that
the demurrer ought to have been overruled if the court agrees
with us that the second proposition contended for by us has
been established upon reasonable authority.

If a reasonable time had not elapsed when the bill was filed
in this case, then the court should have fixed a reasonable time
within which the timber should be cut by appellee, and the
claim of appellee that it had an indefinite length of time
to cut the timber ought to have been cancelled as a cloud upon
the title of appellants.  In the bill of complaint it was alleged
that the appellee pretended to own the timber in controversy,
and the right to remove the same at pleasure, and without
limit as to time, and that this claim casts a doubt,
cloud and suspicion upon the title of complainants to said tim-
ber, etc.  We submit that under this allegation the court should
have taken proof as to what would be a reasonable time, and if
the reasonable time had not elapsed, should have fixed a reason-
able time within which the timber should have been cut and
removed.  The claim of appellee that it did have the right to
cut the timber at pleasure, and for an indefinite period, is a
cloud upon the title of appellants to said timber, and ought to

have been canceled by the court. The argument in our favor is put very strongly in the case of *Pease* v. *Gibson,* 6 Me., 84, above referred to, and we submit this proposition upon the argument of the court in that case, which is as follows: "To admit the construction given by the defendant's counsel, and consider such a permission as a sale of the trees, to be cut and carried away at the good pleasure of the purchaser, and without any reference to the limitation in point of time specified in the permit, would be highly injurious in its consequences. It would deprive the owner of the lands of the privilege of cultivating it, and rendering it productive, thus occasioning public inconvenience and injury; and in fact it would amount to an indefinite permission. The purchaser, on this principle, might, by gradually cutting the trees and clearing them away, make room for a succeeding growth, and before he would have removed the trees standing on the land at the time of receiving such a license or sale, others would grow to a sufficient size to be useful and valuable, and then the owner of the land would be completely deprived of all use of it; principles leading to such consequences as we have mentioned cannot receive the sanction of the court."

*Shannon & Street, Green & Green, and Mayes & Longstreet,* for appellee.

This case comes here on demurrer sustained to a bill whereunder the rights of the appellants are predicated of "Exhibit B" thereto, which controls the averments of the pleader as to their rights thereunder. Code sec. 528; *McNeill* v. *Lee,* 79 Miss., 1901), 459 (s.c., 30 South. Rep., 821); *House* v. *Gumbel,* 78 Miss., 259 (s.c., 29 South. Rep., 71); *Montgomery* v. *Bank,* 79 Miss. 1901), 446 (s.c., 30 South. Rep., 635).

The instrument expressly provides: "We do hereby grant, bargain, sell, convey and warrant to Eastman, Gardiner & Company, a corporatiton; its successors and assigns, all the timber

now or hereafter growing, standing, lying and being on the following land: (describing it.)"

Hereby the fee existing in Hall was severed into two separate and several portions—each real estate, but each separate, distinct and entire—the one embracing the timber with the right of nutriment from the soil and the rights of way, and, the other the soil itself.

As said by Mr. Justice TERRAL, in *Fox* v. *Lumber Co.,* 80 Miss. 1902), 6, "by the common law, trees are a part and parcel of the land upon which they are growing or standing, for the term land embraces not only the soil but its natural productions; and trees growing or standing upon the land are not distinguishable in their character of real estate from the soil. *Harrell* v. *Miller,* 35 Miss., 700; *Jones* v. *Flint,* 10 Adol. & E., 753; *McKenzie* v. *Shows,* 70 Miss., 388 (s.c., 12 South. Rep., 336); by the common law also several sorts of estates and interests, joint or several, may exist in the same fee; as that one person may own the ground or soil, another the structures thereon, another the minerals beneath the surface, and still another the trees and wood growing thereon," etc. "It is too plain for argument that by the common law as administered in England, and in this State, the right and interest of appellee to the timber standing upon the lands of others . . . is an interest in real estate." *Liford's case,* 11 Coke, 49.

In *Harrell* v. *Miller,* 35 Miss., (1858), 701, it was held that the standing timber came within the statutes of frauds and of registry. *Nelson* v. *Lawson,* 71 Miss. (1894), 820 (s.c., 15 South. Rep., 798), and *McKenzie* v. *Shows,* 70 Miss. (1892), 390 (s.c., 12 South. Rep., 336), holds that a conveyance of the timber upon a homestead without the wife's joinder is void. *Walton* v. *Lowrey,* 74 Miss. (1896), 487 (s.c., 12 South. Rep., 243), declares: "To convey the growing timber is to convey an interest in the land, and a parol sale of the timber is

therefore void, and could not be enforced even if all of the purchase money had been paid." For destruction of timber the action was waste—as an injury to the inheritance; trees were not the subject of larceny and went to the heir and not to the personal representative at common law.

This conveyance vested in appellee an estate in the fee, separate and distinct from the estate remaining in Hall in the soil. The fee entire, whereof Hall was theretofore seized, was divided into two separate, several portions—the one whereof Eastman, Gardiner & Company became seized, and the other whereof Hall remained seized; each portion real estate and each subject to the limitations thereto incident. A grant thereof to "Eastman, Gardiner & Company, a corporation, its successors and assigns" passed the fee simple title to "all the timber now or hereafter growing, standing, lying or being" on said parcel. A grant to a corporation, its successors and assigns, is the set formula for vesting a fee—its equivalent, with natural persons, being "to A, his heirs and assigns forever." 2 Min. Ins. (4th ed.), 85, 2 Bl. Comm., 109.

Code 1892, § 2435, provides: "Words of Inheritance not Necessary—Every estate in lands granted, conveyed or devised, although the words deemed necessary by the common law to transfer an estate of inheritance be not added, shall be deemed a fee simple, if a less estate be not limited by express words, or unless it clearly appear from the conveyance or will that a less estate was intended to pass thereby." The policy of the law was henceforth to vest the fee; reversing entirely the policy of the common law. This deed made with the ancient strictness of a portion of the property therein described to this corporation, its successors and assigns, passed to appellee such described portion in fee. *White* v. *Foster,* 102 Mass. (1869), 379; approved in *Perkins* v. *Stockwell,* 131 Mass. (1881), 531, says of such an estate: "A present interest in the trees was granted, and, by the rule that the grant of the thing carries

with it, as an incident, all things that are necessary to the beneficial enjoyment, there passed, by the deed, a right to the soil upon which they grew. This last named right, for the reasons above suggested, was not a mere license to enter upon the land and remove the trees within a limited time, revocable except so far as already acted upon, but rather a peculiar incorporeal right or estate in the grantor's land, so far as necessary, for the support and growth of the trees, with the rights of entry and of way during the time named, and not revocable by the grantors." *Liford's case,* 11 Coke, 49.

Similar grants have frequently come before the courts, and in *Peterson* v. *Gibbs,* 81 Pac. (Cal., 1905), 121, of a deed markedly similar to "Exhibit B," that court said: "The question in each case is, as to what is the contract between the parties. Here there is absolutely nothing in the terms of the agreement which can be construed as making the removal of the timber a condition precedent to the passing of the title, or as causing a delay in such removal beyond the period of ten years from the date of the instrument, or a failure to pay the rental reserved or one-half of the taxes, to operate as a divesting of the title conveyed. The terms of the instrument literally signify an absolute conveyance of the timber, and there is nothing in the provisions relied upon by the plaintiff to impair the force of the plain words of the grant." *Halstead* v. *Jessup,* 150 Ind. (1897), 87; *Hoit* v. *Stratton Mills,* 54 N. H., 109.

In *Ore Co.* v. *Lumber Co.,* 104 Ala. (1894), 470, that court said: "As was held in the case of *Hoit* v. *Stratton Mills, supra,* the sale of the timber was not conditional, but absolute. The title passed to the purchaser and we see no reason for giving to words used in a deed of conveyance of trees, a different meaning than that given when used in the conveyance of minerals or any other portion of the realty; there being nothing in the instrument to control or vary their legal signification."

See, also, *Johnson* v. *Truitt,* 50 S. E. (Ga., 1905), 136; *Alexander* v. *Bauer,* 102 N. W. (Minn., 1905), 388; *Irons* v.

*Webb,* 41 N. J. L. (1879), 204; *Mathews* v. *Mulvey,* 38 Minn. (1888), 342; *Baxter* v. *Mattox,* 106 Ga. (1898), 344.

In 1 Washburn on Real Property, 16, it is properly declared: "But if the owner of land grants the trees growing thereon to another, and his heirs, with liberty to cut and carry away at pleasure forever, the grantee acquires an estate in fee in the trees, with an interest in the soil sufficient for their growth, while the fee in the soil itself remains in the grantor." See, also, *Patterson* v. *Graham,* 164 Pa. St., 381; *Stuckey* v. *Butler,* Hob., 300; *Clapp* v. *Draper,* 4 Mass. (1808), 267; *Putnam* v. *Tuttle,* 10 Gray (Mass., 1857), 48; *Knotts* v. *Hydrick,* 12 Rich. L. (S. C., 1859), 314; *Howard* v. *Lincoln,* 13 Me. (1836), 124.

If the deed stopped here, a fee in the timber would be vested in the appellee. Turning to the rest of the deed and construing the entire instrument in the light of the foregoing, this condition develops: (1) Either the balance of the instrument does express time for removal, or, (2) it does not. If it does, then the law can make no implications that will control the express contract of the parties. By Exhibit "B" there passed to the appellee, the right, "at any and all times from the date hereof of egress and ingress upon said lands to cut down and remove said timber therefrom."

This grant of the right to enter at any and all times is specific; the provisions are not restricted nor limited in any wise. This right was granted to the appellee, its successors and assigns, and was to be exercised at any and all times. It was contracted that at any and all times thereafter the right of entry should exist. Not only exist, but to exist to an end expressly made by contract, "to cut down and remove said timber therefrom," granted in fee. The object whereof the entry was to be made was in no wise left uncertain, but was the removal of the timber, and this was to be "at any and all times after the date hereof." This becomes connected up with the provisions where-

by after the appellee made the entry and began to cut and lumber the same then the estate so granted in fee should be defeated by a condition subsequent.

It was next expressly provided: "And do also grant, for the consideration aforesaid, the right of way over, through, and across said property or any part thereof, to construct, maintain and use logging railways or tramroads or dirt roads, with the right to construct, maintain and use spur tracks or roads over, through, and across said lands continuously for the purpose of removing the timber now owned or to be thereafter acquired by the said Eastman, Gardiner & Company, or their successors or assigns from the said lands and all lands adjacent to the above described lands."

The time element is expressly agreed upon, to be continuous from the date of the instrument, and the right to use the rights of way is for the purpose of removing the timber expressly; surely if the contention of the appellants is correct, that this right to the timber has now terminated, it would have the incongruous effect of leaving us with a right of way, for which we made an express agreement, to accomplish the sole purpose of removing the timber, that purpose and that alone, and then, forsooth, to declare under the contract that appellee had no right to timber whereby alone it could make operative and enjoy this portion of the grant for which value was paid. Appellants' position is thus put: We admit that you have the rights of way, that these rights of way were given for the purpose not only of removing the timber on these lands, both that now there and also that which should grow thereon hereafter; yet, in direct opposition to the express terms of the contract, the law must declare that these rights were valueless— of no avail, because the estate in the timber granted under the set formula of the common law for the creation of a fee simple was no longer in existence, and that a fee had determined. The instrument must be construed as a whole. Appellee would

have a right created here, in fee, to the rights of way, but if we accept appellants' contention, there would be no right to remove the timber thereon, and the rights of way would be vain and valueless for the sole purpose wherefor they existed, and that too in the face of the express declarations of the parties in the contract that the rights of way should exist continuously for removing both the timber now owned or to be acquired. Let it be noted here that "to be acquired" is here used so that it refers to both timber on lands that Eastman, Gardiner & Company owned at the time of the grant, as well as that which it should hereafter acquire; the significance of this is great, for, under the description there passed to Eastman, Gardiner & Company the timber, both that which was then on the said lands and that which should thereafter grow thereon. Thus we have the right of way granted to this very end, that it should exist for the removal of the timber on this land then, and that which should grow thereon after the date of the grant; timber that should come into being at a time after the date of this grant, but which was covered by the express terms of the same, which under appellants' contention would be forfeited before there was an opportunity to use the right of way for the express purpose wherefor it was granted.

The express words of the contract control and leave no place for the application of the rule that in the absence of expression of time as to the removal, the law would imply a reasonable time therefor. The parties contract thus: "Eastman, Gardiner & Company, or their successors and assigns, also to have the right to erect on said lands and to remove from said lands at any time any and all buildings or other property required for logging purposes." Counsel for the appellants, contend that there must be implied, by the law, a condition that the appellee must remove the timber within a reasonable time after the date of the deed, but we must submit that such is not the contract.

Read into the contract, as parcel thereof, that five years was a reasonable time to log, and this done, the contracts are not in any wise the same. Appellee would be deprived thereby of valuable rights for which it paid, in favor of grantors, in a deed poll by construction absolutely destructive of its rights therein.

The deed next provides: "It is especially covenanted and agreed that as to each forty-acre tract herein described and conveyed, this deed shall continue and remain in force until the said Eastman, Gardiner & Company, their successors and assigns, commence to cut and lumber the same, and for one year thereafter, and then to become void and of no effect, but the right of way of said Eastman, Gardiner & Company, their successors and assigns, for railways, tramroads or dirt roads, whether main or spur tracks or roads, shall remain in full force."

This is a special covenant; prior to it there has been given by express terms, first, the right to Eastman, Gardiner & Company, their successors and assigns, all the timber then on the land, or that which might thereafter be thereon; next, to Eastman, Gardiner & Company, their successors and assigns, the right to enter for the purpose of cutting and removing the timber conveyed, at any and all times after the date of the deed, and, finally, to Eastman, Gardiner & Company, their successors and assigns, the right to enter and erect, for the purpose of logging, structures, at any time; to control and limit that which otherwise would have been the investure of the fee in the appellee, we have this covenant as condition subsequent, and this covenant alone. If it does not limit the prior express grants the fee is in appellee beyond the peradventure of a doubt. We are frank to say that in our opinion this limitation is valid. It limits in virtue of the time therein expressed, what has gone before, and one year after Eastman, Gardiner & Company begins to cut and lumber the property, the deed by its express

condition becomes void. Appellants do not aver that this cutting and lumbering have been begun and that one year has elapsed. Had this been done, no question would have been raised by appellee.

Here, we have not a mere recital, but a special covenant that the rights under this deed shall continue in force, and shall continue in force until the happening of a certain event, and for a period of one year thereafter. Appellants confess that this contract is here express. The appellee was desirous of obtaining the timber, having paid therefor, and not knowing exactly when it would be reached in the operation of the mill, adopted the fundamental rule of the common law, that that is certain which can be made certain. The appellants have not the temerity to aver that such was not the understanding at the time of the execution of this instrument, such was its plain terms and there can be no question of its meaning.

That time is expressed in the instrument is beyond controversy, and it is expressly admitted by the appellants, who involve themselves in this most inconsistent and anomalous attitude, they claim the benefit, but shirk the burden, withal forgetting the fundamental maxim—*Allegans contraria non est audienda.* Broom Leg. Max. (7th ed.), 169. They say that in virtue of this covenant the fee simple under the prior grant is reduced to a less estate and that, too, under a statute wherein it is provided that a fee shall pass unless it clearly appear from the instrument that a less estate was intended; and then having used this form of covenant to reduce the estate to one less than a fee, they next proceed to claim that the covenant does not show the time limit of the estate in any wise, and for that reason that the law will imply a reasonable time—a condition precedent under the law being, under this implication, that no time shall be expressed. In the instant case the appellants not only admit that time is expressed by this covenant, but that the same is clearly expressed. They thus attempt to avoid

the effect of this covenant after having used it to reduce the precedent granted estate. If this covenant is sufficient to clearly show that the prior fee shall be only an estate in accordance with the terms of this, then surely this can and must, as we say it does, express time, and expressing time and being the contract of the parties, must control all implications of law which exist merely to supply the terms of an agreement which have not been expressed by the parties, and in grants of this nature, merely to give effect to the maxim—*Cuicumque aliquis quid concedit concedere videtur et id sine quo res ipsa ess non potuit.* Broom's Leg. Max. (7th ed.), 478.

The parties to this deed were uncertain when this timber should be cut, but not that it should be reached, and the desire of both parties was that it be cut, and to arrive at the time limit therefor, the simple expedient was adopted of referring the termination of the estate to a definite, certain act to be done by a definite and certain person in a definite, certain and easily ascertainable way upon the property.

That is certain which is capable of being made certain under all of the decisions, and the denial of this fundamental maxim constitutes the whole of appellants' use.

The covenant is that this deed shall "continue and remain in force until the said Eastman, Gardiner & Company, or their successors and assigns, shall commence to cut and lumber the same and for one year thereafter."

To continue in force, to remain in force, is the contract, and upon that we stand. To continue, is thus defined in 7 Am. & Eng. Enc. Law (2d Ed.), 81, "To 'continue' means to remain in a given place or condition; to remain in connection with; to abide; to stay."

And, as stated in the note, *State* v. *Murphy,* 32 Fla., 197, the court in that case said: "The words, 'continued in office' 'imply not the beginning of a new and different holding but the prolongation of one already existing. To continue in office is to remain in it.'"

To remain, is defined in the note to 24 Am. & Enc. Ency. Law (2nd Ed.), 373, quoting from a North Carolina case: "The testator used the word 'remain' in its commonplace meaning, that is, to continue unchanged; to abide in the place where they were when he wrote the will."

Thus the covenant that the deed continue and remain in force is a covenant that a deed vesting a fee simple title continue in force, and continue in force until defeated by this condition subsequent, and until thus defeated shall continue in force, thus giving appellee the fee.

The word "until" is the technical word of the law for the admeasurement of time, for the creation of a limitation. In contradistinction to a condition, it has a well defined and certain technical meaning, and one withal definite, certain. The fundamental examples of limitations cited all use it, and are similar to the one in the case at bar. As said in 2 Minor's Institute, (4th ed.), 263: "The case contemplated is where an estate is limited to one until a certain event happens; or whilst a certain state of things continue; or during an indeterminate period." Hence, although it is Lyttleton who denominates it a condition in law, it is deemed a more correct designation to style it a limitation, for which there is much sanction of authority. 2 Bl. Comm., 155; 2 Th. Co. Lit., 87, n (L. 2), 120, et seq.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Thus in case of a grant to $\dot{Z}$ until W marries, the estate may endure until that event, but no longer; and then it terminates of itself without any entry on the part of the grantor or his heirs; and the words appointing this to be the time of continuance are called the limitation, from their ascertaining the boundary of the estate." The contention of the appellants is that a reasonable time will be implied, and this instrument will be read as though the law inserted as follows:

"And the said Eastman, Gardiner & Company, their successors and assigns, must begin to cut the timber within a reas-

onable time from the date of this contract." This reasonable time is charged in the bill to have been about five years, and assuming such to be the case, we submit that the court would make thereby a new contract for the parties, not enforce the one they had made in themselves. It would be presumption to argue the difference between the two, substituting five years for the reasonable time, we have.

We respectfully refer to the following authorities:

*Thornton* v. *Natchez,* 88 Miss., 1 (s.c., 40 South. Rep., 498); *Railroad Company* v. *Neighbors,* 51 Miss., 413; *Gadberry* v. *Sheppard,* 27 Miss., 207 (2 Min. Ins [4th Ed.], 1058); *Greenwood* v. *Ligon,* 10 Smed. & M., 617 (17 Am. & Eng. Enc. Law. [2nd Ed.], 14); *Mathew* v. *Mulvey,* 38 Minn., 342; *Baxter* v. *Mattox,* 106 Ga., 344; *Woodruff* v. *Parham,* 8 Wallace, 131; *Peterson* v. *Gibbs,* 81 Pac., 121; *Halstead* v. *Jessup,* 150 Ind., 87; *Irons* v. *Webb,* 41 N. J. L., 204; *Ore Co.* v. *Lumber Co.,* 104 Ala., 470; *Hoit* v. *Stratton Mills,* 54 N. H., 109; *Davidson* v. *Moore,* 37 S. W., 260; *Johnson* v. *Truitt,* 50 S. E., 136; *Alexander* v. *Bauer,* 102 N. W., 388; *Perkins* v. *Peterson,* 110 Ga., 28; *Gex* v. *Dill,* 86 Miss., 10 (s.c., 38 South. Rep., 194); *Orrell* v. *Bay Mfg. Co.,* 87 Miss., 632 (s.c., 36 South. Rep., 561); *Mfg. Co.* v. *Hobbs,* 128 N. C., 47; *Goosey* v. *Goosey,* 48 Miss., 210 (9 Am. & Eng. Enc. Law [2d Ed.], 139); *Kimbrough* v. *Curtis,* 50 Miss., 117; *Denny* v. *Wheelwright,* 60 Miss., 733; *Busby* v. *Rhodes,* 58 Miss., 237; *Mounds* v. *Lumber Co.,* 131 N. C., 23; *Rumbo* v. *Mfg. Co.,* 129 N. C., 9; *Bunch* v. *Lumber Co.,* 134 N. C., 122; *Bond* v. *Lumber Co.,* 127 N. C., 125; *Clapp* v. *Draper,* 4 Mass., 267; *Solomon* v. *Compress Co.,* 69 Miss., 326 (s.c., 10 South. Rep., 446; 12 South. Rep., 339; Broom Leg. Max. [7th ed.], 478); *Ferguson* v. *Arthur,* 128 Mich., 297 (Liford's case, 11 Co., 52a); *Pomfert* v. *Ricroft,* 1 Wm. Saund., 322, b. n.; 1 Lom. Dig., 675; *Gayetly* v. *Bethune,* 14 Mass., 55; *Nichols* v. *Luce,* 24 Pick., 102; *Kimball* v. *Coehees R. R.,* 27 N. H., 488; *Linkenhoker* v. *Graybill,* 80 Va., 838;

*Putnam* v. *Tuttle,* 10 Gray; *White* v. *Foster,* 102 Mass., 379; *Goodwin* v. *Howard,* 47 Me., 595 (7 Am. & Eng. Enc. Law [2d Ed.], 123); *Stuckley* v. *Butler,* Hob., 300; *Gregg* v. *Birdsall,* 53 Barb. (N. Y.), 405; *Paterson* v. *Graham,* 164 Pa. St., 241; *Knotts* v. *Hydrick,* 12 R. Law, 314; *Davidson* v. *Moore,* 37 S. W., 260; *Pease* v. *Gibson,* 6 Me., 83; *Howard* v. *Lincoln,* 13 Me., 122; *Buck* v. *Macon,* 85 Miss., 580 (s.c., 37 South. Rep., 460); *Boults* v. *Mitchell,* 15 Pa. St., 381; *Kaiser* v. *Earhart,* 64 Miss., 492 (s.c., 1 South. Rep., 635); *McInnis* v. *Picket,* 65 Miss., 354 (s.c., 3 South. Rep., 660); *Bramlett* v. *Roberts,* 68 Miss., 325 (s.c., 10 South. Rep., 56); *Clark* v. *Slaughter,* 34 Miss., 65.

WHITFIELD, C. J., delivered the opinion of the court.

The instrument to be interpreted in this case is as follows: "In consideration of sixty-seven dollars and fifty cents ($67.50) to us paid, the receipt whereof is hereby acknowledged, we do hereby grant, sell, convey, and warrant to Eastman, Gardiner & Company, a corporation, its successors and assigns, all of the timber now or hereafter growing, standing, lying, or being on the following described land, situated in the county of Simpson, State of Mississippi, and described as follows: The southwest 1-4 of northeast 1-4, section twenty-five, township 10, range 17 west—together with the right, at any and all times from the date hereof, of egress and ingress upon said land to cut down and remove said timber therefrom; and do also grant to said Eastman, Gardiner & Company, or its successors and assigns, for the consideration aforesaid, the right of way over, through, and across said property, or any part thereof, to construct, maintain, and use logging railways or tram roads or dirt roads, with the right to construct, maintain, and use spur tracks or roads over, through, and across said lands continuously for the purpose of removing the timber now owned or to be acquired by said Eastman, Gardiner & Company, or their successors or assigns, from said land and all lands ad-

jacent to the above described lands.    Eastman, Gardiner &
Company, or their successors and assigns, also to have the right
to erect on said lands, and to remove from said lands at any
and all times, any and all buildings or other property required
for logging purposes.    It is especially covenanted and agreed
that as to each forty-acre tract herein described and conveyed
this deed shall continue and remain in force until said East-
man, Gardiner & Company, their successors and assigns, com-
mence to cut and lumber the same, and for one year thereafter,
and then to become void and of no effect; but the right of way
of said Eastman, Gardiner & Company, their successors and
assigns, for railways or tram roads or dirt roads, whether main
or spur tracks or roads, shall remain in full force.    It is further
covenanted and agreed that Eastman, Gardiner & Company, or
their successors and assigns, will pay the taxes on the land from
the date hereof until the timber is removed.    Witness our signa-
ture, this 21st day of March, 1900.    Bud Hall.    May Hall."

We propose to decide, in this case, nothing except what this
instrument presents for decision.    This is not the case of a
grant by A, owning both the land and the timber thereon, of
the timber in fee simple, without qualification.    We will con-
strue that sort of instrument when the case arises.    This is not
the case of a deed giving the grantee "as long as he wishes" in
which to move the timber; nor the case of a deed giving the
grantee the right to commence cutting when he pleases.    This
instrument is peculiar in its terms, and express in its provisions.
The special covenant contained in it controls and limits, of
course, the general provision preceding.    That special covenant
is as follows: . "It is especially covenanted and agreed that, as
to each forty-acre tract herein described and conveyed, this
deed shall continue and remain in force until the said Eastman,
Gardiner & Company, their successors and assigns, commence
to cut and lumber the same, and for one year thereafter, and
then to become void and of no effect."    This is the controlling

clause in the instrument; and it plainly means, what it expressly declares, that all the timber, whether growing, standing, lying, or being on the lands described, and whether growing thereon when the instrument is made, March 21, 1900, or thereafter growing thereon, which the grantee could take in one year from that date—that is to say, could "cut and remove"—was such timber as the grantee could cut and remove in one year from the time it commenced to cut. The proposition contended for by learned counsel for appellee, that under this instrument the grantee had a fee simple title to all the timber growing on the land at the date of the instrument or growing at any time thereafter, and all such timber, whether growing, standing, lying, or being on said land, without any limit whatever, is, of course, utterly untenable. Indeed, in one part of their brief learned counsel for appellee say: "We are frank to say that in our opinion this limitation is valid. It limits, in virtue of the time therein expressed, what has gone before, and, one year after Eastman, Gardiner & Company begins to cut and lumber the property, the deed by its express condition becomes void."

This concession, which is perfectly correct in sound law, contravenes completely the other contention, in another part of learned counsel's brief, that the instrument provided a grant of all the timber, without any qualification whatever. This concession also completely answers the untenable proposition that a case of forfeiture is here presented. There is no case whatever of forfeiture presented in this cause. The simple provision is that, within one year after cutting begins on each 40-acre tract, the right to cut shall cease and the conveyance become void; in other words, the instrument itself provides its own time of expiration, and the contract becomes void under it. It ceases, not by forfeiture to be declared by the court, but by virtue of an express provision in the instrument itself, to-wit, the provision that the instrument shall become void one year after the cutting commences. Nothing can be clearer than that this provision fixes by contract the expiration of the right of the

grantee to cut and remove timber, and that no element of forfeiture is in any way involved. Notwithstanding this concession, learned counsel say in another part of their brief that "it was expressly contracted and agreed that at any and all times appellee, its successors and assigns, could enter to cut and remove this timber, and are not restricted to any reasonable or any other time whatsoever."

Again, in other places of learned counsel's brief it is earnestly argued that the effect of the instrument is to vest an absolute fee-simple title of all the timber then and there on the land, and that which may be lying, standing or being on the land, without any limitation whatever. The argument is that the grantee might commence to cut whenever he pleased, and not until he pleased, and, if he never begins, he would still own in fee all said timber, and that these rights are vested in the grantee by the terms of this instrument. Nothing could be further from the intention and purpose of the makers of this instrument as expressly set forth in the special covenant named. The grantee had purchased timber standing on a very large number of 40-acre tracts; this case being simply a test case to determine the rights of the parties to timber on all these lands.

The plain purpose of the instrument is to give to the grantee the right to cut and remove the timber. There was not the remotest thought, on the part of either, that the grantee should have the right to the timber, the timber to be kept standing on the land forever, or indefinitely. It is made the duty of the grantee to cut and remove the timber from the land. The provisions of this instrument abound as to the right and the duty to enter and cut and remove the timber from these lands. Plainly the purpose of the instrument was, as to each 40-acre tract, that the grantee should commence to cut and remove the timber within what would be a reasonable time, to be determined by the evidence. In determining what would be a reasonable time within which to commence cutting on one 40-acre tract, then as to what would be a reasonable time to begin cut-

ting on another 40-acre tract, the character of the land, the situation of the timber, the difficulty of access, and many other considerations, perfectly obvious, should be taken into consideration, so as to determine correctly what would be a reasonable time within which the grantee must begin to cut as to each 40-acre tract, separately considered. And what this reasonable time is the authorities abundantly show is a matter to be determined by evidence, according to the circumstances of each particular case.

Learned counsel for appellee insist that the provision in the instrument that the right of way for railroads, tramways, dirt roads, etc., over the lands described in the instrument was to remain in full force, together with the other provision that the right of way across that property for the purpose of constructing, maintaining, and using logging railways or tram roads or dirt roads, with a right to construct, maintain, and use spur tracks or roads over and across said land continuously, shows that the grantee could commence to cut whenever it pleases, even if it be for a period of time no matter how remote. This is a plain confusing of two entirely distinct things. The right of the grantee to commence to cut the timber on each forty-acre tract is one thing; the right to maintain these railroads, tramroads, dirt roads, and spur tracks, which is entirely for the purpose of transporting the timber from the lands to the mill, is another thing, and was intended to exist continuously and to remain in force for the very reason set out in the instrument, to wit, that the grantee might not only cut the timber on these lands, but also from all lands adjacent to the above-described lands. The thought was that the grantee not only should cut and remove all the timber it could cut on each of the forty-acre tracts described in this and other kindred instruments, but that it was to have the right to keep its tramways and other roads and buildings laid down and constructed on these lands thus described in these instruments, not only until

it cut the timber on these lands, but until it had cut the timber on all adjacent lands. The landlord could proceed to put his soil in cultivation, and, if he was to some extent inconvenienced, he had nevertheless in this instrument expressly granted the right to the grantee to maintain these roads until it cut all the timber from the adjacent lands, together with such timber as it could cut and remove from these lands, from the period of time from which it commenced to cut on each of these forty-acre tracts.

We have not been able to see how there could have been any serious difficulty in the construction of this instrument. Courts must look at the whole instrument, not at one clause. They must get the purpose from the whole instrument, and they have a right to look to the situation of the parties who made the instrument, to the subject-matter embraced in the instrument, and to all the conditions surrounding the parties executing the instrument. When this is done, as it must, of course, be done to reach the true intent of the parties, all difficulty in the construction of this instrument instantly disappears. The truth is, we have had a bad wealth of learning cited by counsel on both sides in this case, which is entirely aside from any proper construction of this particular instrument which we are now interpreting. The chief difficulty which has beset the learned counsel of appellee is in stickling about the first clause in the instrument, and the whole argument is made as if there was nothing in the instrument after the description of the land; in other words, as if this were a case where A, owning the land and the timber thereon, had conveyed to B all of the timber, without any other clause in the instrument at all. If this had been the purpose of the parties, all the rest that follows the first clause might well have been omitted; and counsel argues and treats all that follows as superfluous.

Counsel cite *Robinson* v. *Payne,* 58 Miss., 690, a case wholly unlike this, and omit entirely to refer to *Hart* v. *Gardi-*

*ner,* 74 Miss., 153 (s.c., 20 South. Rep., 877), repeatedly approved since its decision, and in which the very contention which they make here now was disallowed, and which the *Robinson-Payne* case was fully considered and explained. That there may be no further confusion along this line, we repeat once more, to reaffirm emphatically, the doctrine of that case, as follows: "The fault in this reasoning is that the rule has no application when the estate intended to be granted is not actually set forth in the granting clause, in words chosen by the grantor for that purpose, but is worked out by legal implication of the intent to convey a particular estate from the use of certain statutory words, and where, in addition, the estate intended to be granted is clearly shown elsewhere in the deed. The rule which required the habendum to yield to the granting clause, when repugnant intents are expressed in the two as to the estate to be conveyed, is applicable only where the intents are both the actual intents of the grantor, and not intents arising by implication of law from the use of certain words, to which the statute has affixed a certan meaning. The distinction is between the actual intent of the grantor expressed in terms of his own, selected to declare that intent, and an intent merely implied by law. And this distinction is abundantly sustained by authority. . . . To the same effect see 3 Washb. Real Prop., p. 466 *et seq.*, especially section 61; Martind. Conv., sec. 111; Devl. Deeds, secs. 213, 214, 216. And see, specially, the very striking case of *Henderson* v. *Mack,* 82 Ky., 379, where the court says: 'The proper end of all rules of construction is to effect the intention of the parties to the instrument; and the intention of a grantor in a deed is to govern when it can be ascertained, equally as in the case of other instruments. In arriving at it, the entire paper must be considered. Blackstone says that the construction 'must be made upon the entire deed, and not entirely upon disjointed parts of it.' If clauses are repugnant to each other, they must be reconciled, if

possible; and the intent, and not the words, is the principal
thing to be regarded." The technical rules of construction are
not to be resorted to, when the meaning of the party is plain
and obvious. As was well said in *Robinson* v. *Payne*, 58 Miss.,
692: 'The intention must prevail.' " This last-quoted clause
shows that the *Robinson-Payne case* announces the same rule
we announced in *Gardiner* v. *Hart*, to wit: "The intention must
prevail."

In view of these authorities, and many others which might
be multiplied, it is obvious that the special covenant that we
have heretofore considered limits the first clause in the instru-
ment, and that the real purpose here was to give to the grantee
the right only to all such timber as had been theretofore
described, which the grantee might cut and remove from
each forty acres within one year from the time it commenced
to cut on each forty acres separately dealt with. The timber
thereafter growing meant the timber thereafter growing
within the life of the contract; that is, growing from the
date of the instrument to the end of one year from the
time appellee began to cut. The opposite construction results
in the utterly incongruous holding that the grantee had the right
to commence to cut whenever it pleased, even if that was for-
ever, and then, after it commenced cutting, one year more; in
other words, that it had forever, plus one year besides forever,
in which to commence to cut. Assuredly, it ought to need no
authority to show that this construction cannot be possibly
maintained. This instrument by its own terms, by this special
covenant hereinbefore referred to, shows beyond the possibility
of doubt that the grantee must begin to cut the timber within
a reasonable time, treating each forty-acre tract separately. It
is not a case, as we have stated before, of a plain grant by A.,
who owned the lands and the timber, to be of the
timber, but nothing more; but it is a case of a grant
by A to B of the timber, with an express direc-

tion that he shall remove the timber, and that he is entitled only to what he shall cut and remove within one year from the time he begins to cut, which means, of course, that he must begin to cut within a reasonable time. This view of the terms of the instrument is abundantly supported by many cases selected with great care by the learned counsel for appellants.

We refer to only a few, which we regard as conclusive of the subject: *Hoit* v. *Stratton Mills,* 54 N. H., 109 (20 Am. Rep., 119);*Mathews* v. *Mulvey,* 38 Minn., 342 (37 N. W., 794); *Pease* v. *Gibson,* 6 Me., 81; *Ferguson* v. *Arthur,* 128 Mich., 297 (87 N. W., 259). And most especially see the case of *Mc-Rae* v. *Stillwell,* 111 Ga., 68 (36 S. E., 604; 55 L. R. A., 513), in which case the instrument, like the instrument here, contained provisions from which it was plain that the intent was that the cutting should commence within a reasonable time; in other words, that case, like this, falls within the class of cases in which the instrument, by express provision, shows the intent to have been that the cutting should commence within a reasonable time. See, also, *Perkins* v. *Peterson,* 110 Ga., 29 (35 S. E., 319). The case referred to of *Pease* v. *Gibson,* 6 Me., 81, contains language so pertinent that we quote it to approve it: "To admit the construction given by the defendant's counsel, and consider such a permission as a sale of the trees, to be cut and carried away at the good pleasure of the purchaser, and without any reference to the limitation, in point of time, specified in the permit, would be highly injurious in its consequence. It would deprive the owner of the land of the privilege of cultivating it and rendering it productive, thus occasioning public inconvenience and injury; and, in fact, it would amount to an indefinite permission. The purchaser, on this principle, might by gradually cutting the trees and clearing them away, make room for a succeeding growth, and, before he had removed the trees standing on the land at the time of receiving such license of sale, others would grow to a sufficient size to be

useful and valuable, and then the owner of the land would be completely deprived of all use of it. Principles leading to such consequences as we have mentioned cannot receive the sanction of the court."

Indeed, we have ourselves already foreshadowed the principle we have announced in *Gex* v. *Dill,* 86 Miss., 10 (s.c., 38 South. Rep., 193), wherein it was held that: "Where a turpentine lease omitted to give date when the rights it granted should begin and end, but work was commenced thereunder within two years, a contention that the lease was void, as tending to create a perpetuity, was untenable." And it was so held to be untenable in the following language of the court: "We cannot support the position that the lease is void, as tending to create perpetuity, in that it does not give the date when the right it grants shall begin and end. We have examined all the authorities cited in the briefs of counsel. Under them we think that the most that can be claimed, if it can be, is that the work must commence in a reasonable time, and in this case we think it did commence in a reasonable time. This record does not show a lapse of thirteen years, as in cases cited, before the beginning, but not quite two years. This conclusion does not make it necessary to decide whether or not in this case the delay, to be unreasonable, must pass the period of the statute of limitation." It is true that the precise point was not squarely decided, but the reasoning of the court, as it seems to us, clearly foreshadowed the principle which we now announce.

*It results from these views that this was a case for an answer, and not a demurrer; and it follows that the decree of the court below, sustaining the demurrer and dismissing complainants' bill, is reversed, the demurrer overruled, and the cause remanded, to be proceeded with in accordance with this opinion—answer to be filed within thirty days from the filing of the mandate in the court below.*

CALHOON, J., delivered the following dissenting opinion.

If the majority be right in its construction of the deed of the Halls, then the reversal and directions for decree are right, and would have my full concurrence. But that view seems to me to be incorrect, in that it manifestly incorporates in a solemn conveyance, deliberately made by the same grantors for a valuable consideration, the words "within a reasonable time, to be fixed by the courts." If it had been the intention of the grantors, or the expectation of the grantee, that this limitation should be placed on the right to commence cutting, it seems it would have been put in the instrument by the grantors; and by every rule the intendments are to be taken most strongly against them. It is not the province of courts to make, add to, or take away from contracts by construction. This deed belongs to that class admitting of no interpretation, because its language is so plain that it interprets itself. The beginning of the warranty conveyance, of "all the timber now or hereafter growing, standing, lying, or being on the land," if it stood alone, I now think gave, under our system, a fee simple title to the timber for all time, without the power of the courts to require entry or removal within any time. A man may do or not do what he pleases with his own, independently of the courts of law or equity. To the foregoing is added, "for the consideration aforesaid," the right of way, and to construct railways, etc., over "said lands continuously," for the purpose of removing timber "from said lands and all lands adjacent" thereto. This certainly fixes no time to commence, nor authorizes any other power to fix it. Then it provides that it shall remain in force "until the said Eastman, Gardiner & Co., their successors and assigns, commence to cut, and for one year thereafter." It concludes that the grantee and its successors and assigns shall "pay the taxes on the land from the date hereof until the timber is removed"; this provision being doubtless thought sufficient to insure reasonable expedition. Certain it seems that the grantee had the fee to

the timber, only determinable after one year from the commencement to cut. This is what was agreed to and paid for. Surely, if we could undertake to fix a reasonable time, we should make it long enough to include "timber hereafter growing."

There are no cases in the books contra to this dissent, I undertake to say. Those thought to be similar are not so in fact, with our system and all the terms of this deed, which must stand or fall by itself. If they are, I do not subscribe to them. I would as soon think of declaring this deed void, as of adding to it. Some cases, curiously enough, do hold leases void with similar, but not exactly the same, provisions, because the time of beginning is not specified by the calendar. But there are none so holding where the law is as with us, as to the separate ownership of timber, the fee in it conveyed, even as to that "hereafter growing," and the taxes saddled on the grantee. Purchasers ought to have some rights, and a very important one is to get what they bargained and paid for. The careful exclusion of the result of the majority opinion will be found in the middle paragraph of *Gex* v. *Dill,* 86 Miss., 21 (s.c., 38 South. Rep., 195). A mere glance at *Hart* v. *Gardiner,* 74 Miss., 153 (s.c., 20 South. Rep., 877), will show its total inapplicability here, where we are considering merely the right to compel commencement to cut under a particular instrument. It is not possible for me to reconcile the conclusion of my associates to the grant of "timber hereafter growing" and the provision that the grantee should "pay taxes on the land from the date hereof until the timber is removed." There is no case referred to by counsel, where the instrument had these clauses, which is decided in accordance with the views of my associates. There can be none, where timber adjudications are like ours.

I stand unalterably opposed to judicial interpolation in private contracts. It may be sometimes—very rarely—necessary to legislative acts, to prevent absurdities from haste or the blun-

ders of clerks; but never, in contracts on valuable consideration, is it proper to add words essentially varying the plain meaning of those used. We would probably never have heard of this case, if timber had remained of the same value, or had decreased in value. A wonderful and unexpected boom in timber values has flooded the courts with litigation. I stand unalterably opposed to such liberal construction as tends to make decision conform to fluctuations of price to suit either vendor or vendee.

The decree below was, in my judgment, exactly right.

After the foregoing opinions were delivered, *Mayes & Longstreet,* for appellee, filed an elaborate suggestion of errors, but the same was overruled; the majority of the court not delivering any written opinion.

CALHOON, J., however, delivered the following opinion, dissenting from the judgment of the court in response to the suggestion of error.

I dissent, because in my view the majority opinion nullifies a perfectly valid contract, and substitutes another, differently worded, made by the court. It is not the interpretation of a contract made, but the creation of a contract never made.