(111 App. Div. 821)

### DECKER v. HUNT.

(Supreme Court, Appellate Division, Third Department. March 7, 1906.)

1. DEEDS—RESERVATIONS—CONSTRUCTION—STANDING TIMBER—RIGHT OF REMOVAL.

Under a deed whereby the grantor excepted and reserved certain standing timber on the property, and the right of way to and from the same, the grantor and his assigns were entitled to a reasonable time only in which to remove the timber.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 462, 465, 468.]

2. ADVERSE POSSESSION.

Where a grantor in a deed of a farm excepted and reserved the standing timber on a part of the farm, and a right of way to and from the same, the fact that his grantee of an adjoining farm, going into possession under a deed assuming to convey the right to take the wood and timber from the first-mentioned farm, resided on his own land for 26 years, testifying that during all that time he took wood and timber from the "reservation," so-called, on the first farm whenever he desired, with the knowledge of the owners thereof, was not sufficient to vest in him title to either the land or timber thereon.

3. DEEDS—RESERVATIONS—CONSTRUCTION.

Where a grantor and his assigns had a reasonable time within which to remove from the property certain standing timber, acquiescence on the part of the grantee and his successors, that those claiming under such

grantor should take a tree or so each year from the reservation, even though enduring for 20 years after the expiration of the time for taking the timber, would not bar the grantee and his successors from thereafter objecting to such taking, as long as no right to take the timber was claimed, except through the reservation in the grantee's deed.

Appeal from Judgment on Report of Referee.

Action by Emma Decker against Abram Hunt. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

O'Connor & O'Connor, for appellant.

F. M. Andrus, for respondent.

PARKER, P. J. The plaintiff, upon this appeal, may claim that the following facts have been established: In 1856 Charles More was the owner of two farms; the dividing line between them running nearly north and south. On April 10, 1856, he contracted to sell the westerly of such farms, describing it by metes and bounds, to one Bloomburgh. Such contract contained a reservation of the timber on the south end of the farm. Just what its phraseology was is not certain, as it has been lost; but it is not very material, as, that contract having been assigned from Bloomburgh to one Powell, More, on December 1, 1860, in pursuance and satisfaction thereof, conveyed the farm to Powell by a warranty deed dated on that day, in which is contained an exception in these words: "Excepting and reserving the standing timber on the south end of farm adjoining Rufus W. Baker and the right of way to and therefrom." Powell resided on the farm for several years, and then conveyed it to one Lawrence Conaro by a warranty deed, containing an exception of the said timber in the same language as above. Lawrence, the next year, viz., on May 1, 1866, conveyed to Isaac Conaro by a warranty deed containing the same exception, and in the same language as above stated. Thus in May, 1866, the title and possession of the westerly farm had passed to Isaac Conaro, but evidently he had not acquired any title to the "standing timber on the south end" thereof. On September 27, 1856, the said More contracted to sell and convey to one Hiram Conaro the easterly farm above mentioned, describing the same by metes and bounds, and such contract also contained the following clause:

"The said More hereby conveys to said Conaro all his right to the wood on the south end of the farm, by reason of a reservation of the same in a contract of sale of land made on or about the 10th day of April, 1856, to Wilson Bloomburgh."

This contract was signed by More, was witnessed, and was under seal. Conaro went into possession of such easterly farm, and on December 1, 1860, More executed to him a conveyance of the same by a warranty deed of that date. There was no mention, however, in such deed of the wood mentioned in such contract. Hiram Conaro resided on such easterly farm until April 10, 1876, and then conveyed the same to one Stephen Peckham, and in such conveyance was included the following provision:

"Also all the wood on the south end of a farm now owned by Isaac Conaro by reason of a reservation of the same in a deed of the farm Isaac Conaro now owns from Charles C. More to Wilson Bloomburgh and by virtue of a contract between the party of the first part [Hiram Conaro] and Charles C. More, dated September 27, 1856, which I have this day assigned to the party of the second part [Stephen Peckham]. The party of the second part has at all times the right to enter upon the said wood lots for the purpose to cut, get, or draw, timber or wood off from said lot."

Thus it appears that, when Isaac Conaro became the owner of the westerly farm in 1866, Hiram Conaro, who was his father, owned and occupied the easterly farm, and claimed to own, and did own, under the provision in his contract from More, whatever wood or timber More had excepted in his conveyance to Powell; and it is plain that up to this time he had taken off from such south end of the westerly farm both timber and wood whenever he desired. After Isaac became the owner, he stated to his father that he wanted a stated time fixed when the timber was to be taken off, and it was then agreed that it should all be removed in four years. Isaac Conaro testified that after the expiration of four years his father took no more wood or timber from there while he owned the place, and that it was substantially all taken off during that four years. He, however, testifies further that he thinks his father left on the place about 25 first growth trees that he did not take off. Isaac's evidence that his father took no timber off of the place after the expiration of the four years is contradicted by several other witnesses; but the referee has found that, by mutual agreement between Isaac and his father, Hiram Conaro, the rights of Hiram under the reservation were terminated. As bearing upon this question, it also appears that subsequent owners of the east farm have actually taken off timber and wood from the south end of the west farm to the knowledge of its owners.

Isaac Conaro resided on such westerly farm from May 1, 1866, until April, 1879. The farm was then sold by a referee on the foreclosure of a mortgage given by said Isaac, and a referee's deed thereof given to Hannah E. Martin, dated April 24, 1879. Such deed described the westerly farm by metes and bounds, but made no reservation of, and no reference to, the timber on the south end. Such lot was subsequently conveyed by several mesne conveyances, and on April 23, 1896, became vested in one Agnes Cronk, and in none of such conveyances was there any mention made of the timber on its south end. On March 1, 1897, said Agnes Cronk conveyed the said westerly lot by a warranty deed dated on that date to Emma Decker, this plaintiff, who took possession of the same and has since resided thereon. Her conveyance contained the following reservation:

"Also subject to a reservation of certain timber on a portion of said premises by Charles More, according to the terms of reservation."

It is for the cutting of some 20 trees, which the defendant claims under such reservation, that the plaintiff has brought this action.

When Hiram Conaro conveyed the easterly farm and the wood on the south end of the westerly farm to Stephen Peckham by deed dated April 10, 1876, John Peckham, such grantor's son, moved onto such premises and continued to reside there until he conveyed them to this

defendant, being a period of 26 years. During all that time he and his father took wood and timber off of the "reservation," so-called, whenever they wanted to, and, when he conveyed to this defendant on April 1, 1902, he pointed out to the defendant the "reservation" and explained it to him. Each of the deeds from Stephen to John Peckham and from John Peckham to Abram Hunt, this defendant, contained the grant of the wood, etc., in the same language specified in the deed to Stephen Peckham, as above quoted. And thus the defendant claims the right to take the trees in question, by virtue of the exception thereof which Charles More made in his deed to Powell dated December 1, 1860, and by virtue of the ownership thereof, which through the several above-mentioned mesne conveyances has been transferred from said More to him.

The trees in question grew upon lands owned by the plaintiff, and they were in her possession when cut and taken therefrom. Prima facie, therefore, the defendant is liable to the plaintiff for their value, and this judgment against him must be sustained, unless he has shown a justification for such taking. The substance of the justification set up in his answer is that he had purchased the right to take the same by the deed from John Peckham, given him April 1, 1902, and above referred to, and that the plaintiff never had any title to such trees.

Did the defendant acquire the right to take such trees by the deed through which he claims?

We must, I think, assume that the reservation made by More, when he contracted to Bloomburgh, was of the "standing timber" only, for that is all that he excepted and reserved in his conveyance to Powell, which was given in performance of such contract; and, conceding that all which he so excepted and reserved was transferred and conveyed to Hiram Conaro by the contract executed on September 26, 1856, we can only assume that by the phrase "wood," therein used, only "standing timber" was intended. Assume, then, that Hiram Conaro by such contract became the owner of the "standing timber" then on the south end of the farm that is now owned by the plaintiff, and that he then also acquired "the right of way to and therefrom," the question is presented whether he thereby acquired the right to forever keep and maintain such standing timber on the premises, with the continuing right to take it, or any part of it, off whenever he or his grantees might desire, or whether he or his grantees were not required, under such a title, to remove such "timber," within a reasonable time thereafter; no definite and particular time having been specified. I cannot agree with the referee that the reservation was operative to More only. The title to the timber was "excepted" from the operation of the deed to Powell and remained in him (More); but I think that the plain intent of the parties was that such timber should be removed within a reasonable time, and so such exception should be construed. If More and his grantees might for all time neglect to remove such timber, and still hold and own the same, it would practically prevent Powell and his grantees from clearing up and using that part of the farm on which it was standing, and would, in effect, be an exception of all that part of the farm itself, a purpose which clearly is in direct contradiction of the whole conveyance. ..

98 N.Y.S.—12

It has been frequently held that when the owner of a tract of land has conveyed to another all the timber on such tract, with the right to enter thereon and remove the same, and no time is specified in which to remove it, a reasonable time only is intended, and that the conveyance must be so construed. Am. & Eng. Ency. of Law, vol. 28, p. 542, and cases cited. And that, when a definite time is expressed in the conveyance, as, for instance, 10 years, and the grantee does not take it off within such time, the timber remaining shall be considered as belonging to the owner of the land, and the conveyance must be construed as a grant only of so much of the timber which the grantee shall take off within that period. Boisaubin v. Reed, 1 Abb. Dec. 161; Id., *41 N. Y. 323; Kellam v. McKenstry, 6 Hun, 381; Id., 69 N. Y. 264.

Construing the exception and reservation contained in the Powell deed by the above rules, we must conclude that More and his grantees acquired thereunder the right to cut and take away so much of the "standing timber" on the south end of the plaintiff's farm as they should cut and take within a reasonable time after such conveyance, and that at the expiration of such time so much thereof as remained became the property of Powell and his grantees. If, then, More's right to take off such timber did not extend beyond a reasonable time after the Powell deed was given, it is plain that Hiram Conaro, his grantee, could not extend such right by any conveyance he could give to the Peckhams, and the arrangement which Isaac Conaro testified he made with his father, Hiram, that such timber should all be taken off in four years—and which evidence the referee seems to have believed—seems to be very satisfactory evidence that a reasonable time to remove such timber had passed before Hiram Conaro had left the place, or conveyed anything whatever to Stephen Peckham. Such deed was given on April 10, 1876, more than 16 years after the Powell deed, and the timber in question was located on about five acres of land. It would appear that a reasonable time to take off such timber had long expired, and that the above-mentioned conveyance from Conaro to Peckham in fact conveyed nothing whatever from the south end of the westerly farm, since Conaro's rights therein had then fully terminated.

The defendant, however, claims that, even if John Peckham did not acquire the right to take such lumber by a paper title, he acquired title to the wood and timber in question by prescription. John Peckham went into possession of the easterly farm in April, 1876, under a conveyance from Hiram Conaro, which deed also assumed to convey the right to take the wood and timber from the south end of the westerly farm. He resided there for 26 years before he conveyed to the defendant, and he testifies that during all that time he took wood and timber from the "reservation," so-called, whenever he desired, with the knowledge of the owners thereof. Such evidence as to what he and his father did in taking such wood and timber is very indefinite, but it seems clear that such user was not sufficient, within the authorities, to vest in them title to either the land or the wood and timber thereon. Mission of the I. V. v. Cronin, 145 N. Y. 524, 38 N. E. 964.

Nor do I think that such user on the part of More's successor, and acquiescence on the part of Powell's successors, as appears from the evidence in this case, has operated as an extension of the reasonable

time which More and his successors acquired by the exception and reservation, in which to cut and remove the timber in question. Acquiescence on the part of Powell's successors that Conaro, or the Peckhams, take a tree or so each year from the reservation, would not bar the owner of the land from insisting that they must cease taking such timber after the time permitted by the exception and reservation had expired, and, even though such acquiescence had endured for 20 years, it would not operate as such a bar, so long as neither Conaro nor the Peckhams claimed any right to take such timber, except through the exception and reservation which More made when he conveyed to Powell. Either one of the owners of such westerly farm might consent, if he chose, to let Peckham take more time than the exception gave; but, in case he granted to another such farm without reservation, that grantee might insist that Peckham had acquired no rights by such permission, other than he took by the paper title through which he claimed. Under such paper title, as shown above, he acquired no rights, and therefore, in my opinion, the plaintiff's judgment was right, and should be affirmed.

Judgment affirmed, with costs. All concur.