CHAPMAN v. DEARMAN et al.   (No. 22.) *
(Court of Civil Appeals of Texas. Beaumont. Nov. 4, 1915. Rehearing Denied Dec. 16, 1916.)

Logs and Logging ⇐=3—Sale of Standing Timber—Construction of Contract—Reversion of Title.

Where defendants, for a consideration, granted, sold, and conveyed to plaintiff's assignors all the pine timber standing and growing upon a described tract of land, and empowered the grantees to enter upon the said land and cut the timber and remove it, the instrument including the usual covenants of warranty, the deed conveyed a fee simple to the timber, so that the plaintiff was not required to remove the same within a reasonable time, but could do so at his pleasure, and title to the timber did not revert to the grantor after a reasonable time.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. ⇐=3.]

Middlebrook, J., dissenting.

Appeal from District Court, Jasper County; A. E. Davis, Judge.

Action by J. R. Chapman against James Dearman and others, in which the defendant James Dearman filed a cross-action in trespass to try title. From a judgment for defendants and order dissolving a temporary injunction theretofore issued as to a portion of the land, and from an order overruling motion for new trial, the plaintiff appeals. Reversed, and judgment rendered.

Terry, Cavin & Mills, of Galveston, for appellant. Powell & Huffman, of Jasper, for appellees.

BROOKE, J. This suit was filed in the district court of Jasper county, by J. R. Chapman, against James Dearman and wife, Lettie Dearman, and Isaac Dearman, for the title and possession of all of the pine timber located on the W. A. Isaacs 160-acre survey of land in Jasper county, and for an injunction restraining the said James Dearman, Lettie Dearman, and Isaac Dearman from cutting the timber on the said land. The defendant Isaac Dearman answered by disclaimer, and the defendants James Dearman and wife, Lettie Dearman, answered denying that the plaintiff had any right to the timber located on said land, and filed a cross-action in trespass to try title for said land. Upon the trial of the case, plaintiff disclaimed any interest in the land other than the timber located upon the same, and the cross-action of the defendants was dismissed. The case was tried before the court without a jury, the court finding that the plaintiff had a deed from the defendants to the timber located on said land, but that under said deed the same should have been removed from the land within a reasonable time, which the court found to be ten years, and which time had expired. The court further found that the defendants had, previous to the filing of this suit, parted with any title which they might have had in and to the north half of said survey, and rendered judgment for the defendants against the plaintiff for all of the timber located on the south half of said survey, and dissolving the injunction which had been theretofore issued as to said south half, but rendered judgment for the plaintiff for the north half of said survey, and making perpetual the injunction restraining the defendants from cutting and removing the timber from the same. Motion for new trial was duly filed, and an amended motion, which was by the court overruled. Appeal bond was duly filed, and the cause is here presented for adjudication.

The deed under which plaintiff held, and upon the construction of which depends the decision of this case, is as follows:

"The State of Texas, County of Jasper.

"Know all men by these presents:

"That we, James Dearman and Lettie Dearman, of the county of Jasper and state aforesaid, for and in consideration of the sum of one hundred dollars to us in hand paid by T. W. House, J. H. Jones, A. J. Sherman, and J. M. Rockwell, executors of the estate of M. T. Jones, deceased, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said T. W. House, J. H. Jones, A. J. Sherman, and J. M. Rockwell, executors as aforesaid, of the county of Harris, and state of Texas all the

pine timber now standing and growing upon the W. A. Isaacs 160-acre survey of land situated in said Jasper county, Texas, located on the east bank of the Neches river and just south of and adjoining to the Elmira Wright and Alfred Pool 160-acre pre-emptions survey, and we do hereby authorize and empower the said T. W. House, J. H. Jones, A. J. Sherman, and J. M. Rockwell, executors, as aforesaid, their heirs, assigns, and legal representatives to enter upon said land with log wagons, log carts, tramroad or in any other way they may see fit and proper and cut same and haul off said pine timber, herein conveyed, and for a more complete description of said land reference is made to the patent and field notes as follows:

"'Beginning on east ...... of Neches river stake for 1st corner a black gum 24 in. diam. brs. n. 53 W. $13^3/_{10}$ vrs. dist. Thence north 1340 vrs. intersecting N. bdy. line of Jasper county, a stake for corner a pine 10 in. dia. brs. n. 34 W. $3^2/_{10}$ vrs. dist. Thence S. 75 W. with said county line set rock marked W. for a corner a pine ...... in dia. brs. S. 21 deg. E. 5 vrs. Thence south 850 vrs. connecting survey at that point to N. E. corner of Britton Addison 160-acre tract by a line running west 440 vrs. continue south 1350 vrs. east bank of Neches river a birch 20 in. dia. brs. N. $4^6/_{10}$ vrs. Thence down the river with its meanders N. 75 deg. E. 700 vrs. to the place of beginning.'

"To have and to hold the above-described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto the said T. W. House, J. H. Jones, A. J. Sherman and J. M. Rockwell, their heirs and assigns, forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said T. W. House, J. H. Jones, A. J. Sherman, and J. M. Rockwell, their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness out hands at home this 17th day of December, A. D. 1898.

"James X Dearman.
his
mark

"Lettie X Dearman.
her
mark

"Signed and delivered in the presence of Green Spell.

"The State of Texas, County of Angelina.

"Before me, S. H. Townsend, a notary public in and for Angelina county, Texas, on this day personally appeared James Dearman, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this 19th day of December, A. D. 1898.

"S. H. Townsend,
"[Seal.]　　　Notary Public Ang. Co., Tex.

"The State of Texas, County of Angelina.

"Before me, S. H. Townsend, a notary public in and for Angelina county, Texas, on this day personally appeared Lettie Dearman, wife of James Dearman, known to me to be the person whose name is subscribed to the foregoing instrument and having been examined by me privily and apart from her husband and having the same by me fully explained to her, she, the said Lettie Dearman, acknowledged such instrument to be her act and deed and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

"Given under my hand and seal of office this 19th day of December, A. D. 1898.

"S. H. Townsend,
"Notary Public, Ang. Co., Tex.

"Filed for Record January 12, 1899, at 9 A. M. Recorded in Deed Book U, pp. 263-265."

In the case of Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803, the court had before it the construction of an instrument similar in many respects to the instant case. It was as follows:

In consideration of the sum of $100 to him paid, the deed says: "I have bargained, sold and released unto the Hope Lumber Company, heirs and assigns, forever, in fee simple, the following described tract or parcel of land, to wit: All the timber on the ninety-six acres (being the land described in plaintiff's petition). And I do hereby bind myself, heirs and legal representatives to warrant and forever defend, all and singular the title to the above-mentioned premises unto the said Hope Lumber Company, heirs and assigns, against every person or persons whomsoever lawfully claiming or to claim, the same or any part thereof."

The following questions were certified to the Supreme Court:

Question 1. Did the title of the timber not removed from the land within a reasonable time revert to the owner of the soil?

Question 2. Does the Lodwick Lumber Company owe Taylor for the value of the timber cut and removed without his consent after the expiration of a reasonable time from the making of the original contract of sale?

Both of the above questions were answered by the Supreme Court in the negative, and, rendering the opinion in that case, the court says:

"The deed unmistakably expresses the intention to convey the timber as an interest in the land on which it stood, and to convey it in fee simple and forever. It is a well-settled proposition that trees may be so conveyed or reserved in a deed as to leave in one person a title in fee in the soil generally and in another a like title in the timber. Where this is the case, there goes with the title to the timber the right to the use of the soil for its sustenance and of entry upon the land for its enjoyment. Consequently no such limitation as that the timber must be removed within a reasonable time can be imported by construction into such a grant or reservation. The very terms of the deed, when it says the title is conveyed in fee simple forever, answer any question that might otherwise arise as to the nature and duration of the right granted. 11 Coke, 85, Liford's Case; Stanley v. White, 14 East, 332; Clap v. Draper, 4 Mass. 266 [3 Am. Dec. 215]; Wait v. Baldwin, 60 Mich. 623 [27 N. W. 697, 1 Am. St. Rep. 551]; Howard v. Lincoln, 13 Me. 122; 1 Washburn, Real Property, 16; Knotts v. Hydrick, 12 Rich. (S. C.) 314; White v. Foster, 102 Mass. 375.

"Contracts of a different character for the sale of timber as personal property have been passed upon in a great number of reported cases, and have usually been construed as giving only the right to cut and remove the timber within a time fixed by the parties, or, when the time is not expressly stipulated, within a reasonable time; and the cases cited by the Court of Civil Appeals in its opinion accompanying the certificate are of that class. There is much diversity of view among them upon questions which do not properly arise here. We have found no case which gives to such a deed as that in question a less effect than that which we have ascribed to it. In one of the cases of the class last referred to, both kinds of contracts are thus considered: 'Growing timber constitutes a part of the realty, is parcel of the inheritance, and, like any other part of the estate, may be separated from the rest by express reservation or grant, so as to

form itself a distinct inheritance. It was early so held by this court in Clap v. Draper, 4 Mass. 265 [3 Am. Dec. 215], and trespass by the grantee of such an estate against the owner of the soil was maintained, for cutting down the trees. See, also, Putnam v. Tuttle, 10 Gray (Mass.) 48. When so separated and made a distinct estate, it has the incidents of real property so long as it remains uncut, *and the rules which govern the title and transfer of such property must apply.* (Italics ours.) It is like property in mines and minerals, which may in like manner be separated from the general ownership of the soil, and become distinct estates in freehold, with all the incidents belonging to such estates. Adams v. Briggs Iron Co., 7 Cush. [Mass.] 367. It may be difficult in many cases to determine, from the terms of the contract, whether the parties intend to grant a present estate in the trees while growing, or only a right, either definite or unlimited as to time, to enter and cut, with a title to the property when it becomes a chattel.'"

The instrument under consideration, in our judgment, is a conveyance in fee simple of the timber on the land described, and the deed itself shows by its terms the nature and extent of the right conveyed.

In the case of Zimmerman v. Daffin, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, the instrument was similar to the one under consideration. The court, in the Zimmerman Case, says:

"The controversy in the case grew out of the purchase and sale of the growing pine timber on land of which Bettie Daffin was the owner at the time of the purchase and sale. On the 11th day of November, 1901, Bettie Daffin and her husband sold to the defendant appellee 'all of the pine timber, 12 inches in diameter and up,' then standing and being on said lands described in the conveyance which they on the same day executed to the defendant, and which is in the following language: 'State of Alabama, Clarke County. Know all men by these presents, that, for and in consideration of $960, we do grant, bargain, sell and convey unto the C. W. Zimmerman Mfg. Co. all the pine timber, 12 inches in diameter and up, now standing and being on the following described lands, situated in Clarke county, Alabama. (Omitting the description.) To have and to hold to C. W. Zimmerman Mfg. Co., their successors and assigns, forever and we do covenant with the C. W. Zimmerman Mfg. Co. that we are seised in fee of the said premises, and that we will warrant and defend the same to the said C. W. Zimmerman Mfg. Co. against the lawful claims of all persons whomsoever. For the same consideration we do grant to C. W. Zimmerman Mfg. Co. three rights of way over and across any lands owned by us for all railroads, dirt roads, and log ditches which it may desire to construct. The said C. W. Zimmerman & Co. is allowed two years from this date within which to cut and remove the timber herein conveyed.'"

The court further says in the opinion:

The timber was cut on the land after the expiration of the time limit specified in the contract. "If in the present case it was the intention of the grantors that the title to the timber should revert to them on failure of the grantee to cut and remove it within the time specified, it would have been an easy matter to have expressed it in the deed; but on the face of the instrument it is at least a question of doubt as to whether the limitation is a condition subsequent of the contract of sale or a covenant, and, following the trend of the authorities above referred to in respect to the construction to be adopted when such question is doubtful, and in the light of the ruling in the case of Magnetic Ore Co. v. Marbury Lbr. Co., 104 Ala. 465, 16

South. 632, 27 L. R. A. 434, 53 Am. St. Rep. 73, we hold that the clause or paragraph in the deed in respect to the time for cutting and removing the timber is a covenant, and does not operate a forfeiture of the title on the failure of the vendee to cut and remove the timber within the time specified. Magnetic Ore Co. v. Marbury Lbr. Co., supra; Howard v. Lincoln, 13 Me. 22; Goodwin v. Hubbard, 47 Me. 595; Knotts v. Hydrick, 12 Rich. (S. C.) 314; Halstead v. Jessup, 150 Ind. 85, 49 N. E. 821."

The Supreme Court, in the cases of Houston Oil Co. of Texas v. Boykin, 153 S. W. 1176, and Houston Oil Company of Texas v. Hamilton, 153 S. W. 1194, in which writs of error were granted, but which cases have not yet been decided, seems to recognize the soundness of the decision of the Zimmerman v. Daffin case, and in granting the writ of error in the case of Houston Oil Co. of Texas v. Boykin they made the following notation (copied from appellant's brief):

"We doubt the correctness of the holding of the Court of Civil Appeals that a forfeiture of the property right in the timber was warranted by the failure to remove it from the land within a reasonable time, in the absence of permission to that effect in the contract of conveyance. Quære: Is the owner of the timber not entitled to it in such a case upon proper compensation to the owner of the land for the use of the land for the purpose of getting it?"

In granting a writ of error in the case of Houston Oil Co. of Texas v. Hamilton, the court says (copied from appellant's brief):

"We are inclined to the opinion that the rights of the plaintiff in error to the timber under the conveyance did not forfeit upon its failure to remove the timber within simply a reasonable time."

We think it useless to discuss authorities further, and what we have said disposes of the case.

We hold therefore that the court erred in rendering judgment for the defendants for the timber situated on the south half of the Wm. A. Isaac 160-acre survey in Jasper county, Tex., and in holding that under the deed dated 17th day of December, 1898, James Dearman and his wife, Lettie Dearman, did not convey the fee-simple title to all of the pine timber standing and growing upon the said Isaac survey. We are of the opinion, as said before, that said deed granted the absolute fee-simple title to all the pine timber standing and growing upon the W. A. Isaac 160-acre survey.

Therefore the judgment of the lower court is reversed, and judgment is here rendered in favor of appellant for the restitution and possession of the timber located on the south half of the Wm. A. Isaac survey, and the writ of injunction heretofore issued and dissolved by the honorable district court of Jasper county, restraining the appellees from removing the timber from the said land, is made permanent.

Reversed and rendered.

MIDDLEBROOK, J. I cannot agree with my Brethren in their disposition of this

case; and as I view the decisions of our Supreme Court and the different courts of Civil Appeals, upon similar cases, there is a distinction between the instant case and cases heretofore decided. Certainly, there is a distinction in the instant case and the case of Lodwick Lumber Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803. In the Lodwick Lumber Co. Case, the grantor, who was plaintiff, sought to recover the timber from the Lodwick Lumber Company, grantee. As reported, there is nothing to show that the timber involved was on land occupied by Taylor as a homestead; nor is there anything to show that Taylor had ever importuned the lumber company to remove the timber from his premises that he might have the use of the land for agricultural purposes. There is, also, the further distinction that the deed in the Lodwick Lumber Company case contains the phrase, after the bargaining and selling clause, "in fee simple." The writer, however, does not attach any great weight to the expression, "in fee simple."

In the instant case, the undisputed testimony shows that Jim Dearman sold the timber on, aproximately, 135 acres of land, for the sum of $100; that said land was Jim Dearman's homestead, and is his homestead; that Jim Dearman asked the party who took the deed from the grantors to the appellant, how long it would be before the timber would be removed from the land; and that he was assured that the timber would be removed just as early as possible. It shows that the timber is on Jim Dearman's homestead, that Jim Dearman had repeatedly requested appellant to remove the timber from the land, and it also shows that appellant could have removed the timber from the land long before Jim Dearman began to remove the timber from the land and before this suit was filed. It shows, also, that Jim Dearman wanted to clear the land that the timber is on and settle his children upon it, who are now grown. It is to be noted, also, that the deed is written upon the usual blank form supplied by stationery companies, and therefore, in the warranty clause, the expression "premises" occurs. The deed is signed by Jim Dearman and his wife by their mark for signature. Noting the signature by mark does not cast any reflection upon any of the parties concerned in the making and taking of the deed, but is mentioned in view of the writer's opinion, hereinafter expressed, as to the intention of the parties at the time the deed was executed.

In this case, no time limit is mentioned for the removal of the timber, but the trial court found that a reasonable time had elapsed since the making of the deed for the removal of the timber, and entered judgment for the defendant for the timber.

By the terms of the deed, grantor sold "all of the pine timber now standing and growing upon the W. A. Isaac 160-acre survey."

Not losing sight of the force of the terms, "have granted, sold and conveyed, and by these presents do grant, sell and convey," and also of the full warranty clause as is expressed in the deed, and of the importance and weight of this verbiage as is construed by our courts, and, again, not ignoring the force of the principle of law that the terms of a written contract cannot be disputed nor varied by parol evidence, let us consider the terms of the deed.

It is presumed that the language couched in a written contract reflects the minds and intentions of the parties to the contract at the time it was entered into, and thus it is that the law holds them to the verbiage of the contract as the expression of their minds at the time of entering into the contract; for, without such rule of law, a privy to the contract could change his mind as prosperity on the one hand and adversity on the other might follow as a result of the contractual relation, and by such change of mind give birth to grave perplexities and through dishonesty, both of mind and purpose, wrongfully undo what was righteously done.

But could any such mischief arise out of a scrutiny of the deed before us?

When this deed was executed, two parties desired to do exactly opposite things. T. W. House et al. wanted to buy Jim Dearman's pine timber then growing on his home tract of land. Jim Dearman wanted to sell them the pine timber then standing and growing upon his home tract of land. Their minds met, and the one bought, and the other sold, the pine timber then growing and standing on Jim Dearman's home tract of land. That is what the contract says they did. What pine timber did they buy? They bought the pine timber then growing and standing on Jim Dearman's home tract of land. Did they buy any other than the pine timber then standing and growing on said land? The deed does not call for more than the pine timber then standing and growing on his home tract of land. Therefore they did not buy any other than the pine timber then growing and standing on said land, for to say they did buy other than the timber then standing and growing on said land is to vary and impeach the terms of the written contract between them.

If the doctrine laid down in Lodwick Lumber Company v. Taylor case is to be regarded as the last analysis and fixed law of all cases of sales of growing timber on lands where there is no time limit for the removal of the timber and where the fee-simple title is not, also, specifically conveyed in such terms, and if the doctrine therein prescribed is applicable to the instant case, the grantors, their heirs and assigns, may from the date of such deed to the end of time hold such lands and raise pine trees upon it; when, by the express

terms of the deed through which they hold, they bought only the pine timber then growing and standing upon such land. Such may finally be the fixed law, but we do not believe it will be. Indeed, it would be hard to understand how it could be the law clothed with habiliments of equity and justice.

Can it be said that the words, forming the covenants of sale and warranty of title in a deed, are worthy of more consideration, and of more probative force, than the thing actually sold and the title thereof warranted?

In East Texas, it is well, if not judicially, known, that in the sale of many small tracts of pine timber the grantor recognizes two considerations, the money he receives for the timber, and the removal of the timber from the lands by the grantee, thereby saving the grantor the expense of cutting and removing such timber. In the instant case, 135 acres of pine timber is sold by the grantor to the grantee for the sum of $100. There is nothing in the record to show what amount of timber is on said land, but it is reasonable to suppose that it is the ordinary timbered land of that section of the country. If it is, the grantor must have had two considerations in view when he sold the 135 acres of timber for the sum of $100, i. e., the $100 received, and the removal of the timber from the land by the grantee, in order that he might more easily put such land in cultivation. It cannot be said that the grantor in this case intended to convey to the grantee the use of the 135 acres of land upon which the timber was then growing, forever, for the purpose of continuously growing pine timber for the grantee. Such construction is unreasonable in the first place, and, in the second place, it disputes the plain terms of the written contract between them; because he did not convey them any pine timber except the pine timber then standing and growing upon said land; and, who, 1000 years from now, could segregate the pine timber growing upon said land when the deed was made from that which sprang from the seed 10 years after the making of the deed? It cannot be done. The writer is not unmindful of the test of the age of a tree by the rings in it from pith to bark; but he affirms that no such test could be successfully and practically carried out in the segregating of pine timber from lands which was on the land 10 years ago and which might be on the land 40 years hence. The writer is unable to draw a distinction between an absolute deed to the fee simple of a piece of land without any sort of interest left to the grantor, so far as the grantor's interest is concerned, and a deed to timber growing upon said land at the time the deed is made, when the court of highest resort gives the use of such land to the grantee forever, and awards him the privilege of letting the timber stand and grow on said land forever, to the exclusion of the use of such land by the grantor. The grantor had as well sold the entire premises in fee simple, without a specification that he sold only the pine timber then standing and growing on said land; and in the instant case, if the Lodwick Lumber Company Case is to be regarded as sound doctrine and applicable to the facts of this case, as my Brethren say it is, then, the grantees, for all intents and purposes, have the use of the grantor's land forever for the sum of $74^2/_{27}$ cents per acre, when every one knows that lands in East Texas at the time the deed under consideration was made, whether in the level, alluvial piney woods, or in sections containing bog, morass, and fen, were worth from $2.50 to $15 per acre.

The writer hereof is of the opinion that, in such deeds as the one under consideration, it was not the intention of the parties to convey any fee-simple title in the land itself, and that such deeds should not be so construed, and that the purchaser under such deed acquires only the right to the timber and the right to enter upon the land in a reasonable time and remove such timber from the land, and that, after a reasonable time has expired, he has lost his right to enter upon the land, and, having lost the right to enter upon the land, he has lost all rights ever granted under the terms of his contract. He does not believe that the doctrine of remuneration for the use of the land is sound, because that doctrine forces the grantor, at last, to permit an usurpation of his land by the grantee for a remuneration not provided for by the terms of his contract, and may, absolutely, preclude the grantor from putting his land to the use that he intended at the time he entered into the written contract. He thinks, also, that there is nothing in the doctrine, as expressed by some of the higher courts, that he is entitled to remuneration for the depletion of his soil in growing timber for his grantee; for, so far as he knows, or has ever been informed, trees do not deplete the productive force of the soil. He does, however, very heartily agree with the doctrine that after a reasonable time the grantor has a right to remove the timber from his land in order that he may have the use of the land for such purpose as he desires, even, though he has to destroy the timber in order to do so, where a reasonable time has already elapsed in which the grantee might have removed the timber after the contract was entered into, or the timber deed was made.

At the time, the doctrine of the force and effect of the words, "grant, bargain, sell and convey forever," and the warranty clause, warranting the title forever, was originally enunciated, by our courts, deeds like the one in question were practically unknown in our state, and such facts as are involved in the case under consideration were not considered, and the writer believes that the new

condition is worthy of consideration, and that, in construing such an instrument as the one before us, the courts should look to and construe the entire verbiage of the contract, and especially the verbiage as to the thing sold, as well as the words expressing the conveyance and the warranty.

The authorities are so numerous and so conflicting upon the issues under consideration that the writer has not sought to quote from them; but in order that the profession may have the benefit of ready reference to the authorities, pertinent to similar cases, he here cites the authorities in their order from our own and the different states of the Union, as is collated by counsel for appellant in Houston Oil Co. of Texas v. Pearl Bunn, which has been kindly furnished by request to the writer.

Texas cases: Lodwick Lbr. Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803; Beauchamp v. Williams, 115 S. W. 130; Montgomery Dev. Co. v. Miller-Vidor Lbr. Co., 139 S. W. 1015; Houston Oil Co. v. Boykin, 153 S. W. 1176; Houston Oil Co. v. Hamilton, 153 S. W. 1194; Lancaster v. Roth, 155 S. W. 597; North Texas Lbr. Co. v. McWhorter, 156 S. W. 1152; Davis v. Conn, 161 S. W. 39.

Alabama cases: Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; Goodson v. Stewart, 154 Ala. 660, 46 South. 239; Gibbs v. Wright, 5 Ala. App. 486, 57 South. 258; Christopher v. Curtis-Attalla Lbr. Co., 175 Ala. 484, 57 South. 837; Mt. Vernon Lbr. Co. v. Shepard, 180 Ala. 148, 60 South. 825; Ward v. Moore, 180 Ala. 403, 61 South. 303; Wright v. Bentley Lbr. Co., 186 Ala. 616, 65 South. 353; Shepard v. Mt. Vernon Lbr. Co. (Sup.) 68 South. 880; West v. Maddox (Sup.) 69 South. 101.

New Hampshire cases: Peirce v. Finerty, 76 N. H. 38, 76 Atl. 194, 79 Atl. 23, 29 L. R. A. (N. S.) 547.

Pennsylvania: Patterson v. Graham, 164 Pa. 234, 30 Atl. 247.

Louisiana: St. Louis Cypress Co. v. Thibodaux, 120 La. 834, 45 South. 742.

Florida: McNair & Wade Lbr. Co. v. Adams, 54 Fla. 550, 45 South. 492; Same v. Parker, 64 Fla. 371, 59 South. 959.

Tennessee: Bond v. Ungerecht, 129 Tenn. 631, 167 S. W. 1116, L. R. A. 1915A, 571; Carson v. Three States Lbr. Co., 91 S. W. 53; Id., 108 Tenn. 681, 69 S. W. 320.

Missouri: Hanna v. Buford (App.) 177 S. W. 662.

Georgia: McRae v. Stillwell, 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513.

Arkansas: Liston v. Chapman & Dewey Lbr. Co., 77 Ark. 116, 91 S. W. 27; Fletcher v. Lyon, 93 Ark. 5, 123 S. W. 801; Earl v. Harris, 99 Ark. 112, 137 S. W. 806.

Kentucky: Kentucky Coal & Timber Dev. Co. v. Carroll Hardwood Lbr. Co., 154 Ky. 523, 157 S. W. 1109.

North Carolina: Gay Mfg. Co. v. Hobbs, 128 N. C. 46, 38 S. E. 26, 83 Am. St. Rep. 661; Midyette v. Grubbs, 145 N. C. 85, 58 S. E. 795, 13 L. R. A. (N. S.) 278.

South Carolina: Flagler v. Atl. Coast Lbr. Corp., 89 S. C. 328, 71 S. E. 849; McClary v. Atl. Coast Lbr. Corp., 90 S. C. 153, 72 S. E. 145.

West Virginia: Adkins v. Huff, 58 W. Va. 645, 52 S. E. 773, 3 L. R. A. (N. S.) 649, 6 Ann. Cas. 246.

Virginia: Young v. Camp Mfg. Co., 110 Va. 678, 66 S. E. 843.

New York: Decker v. Hunt, 111 App. Div. 821, 98 N. Y. Supp. 174.

Ohio: Clark v. Guest, 54 Ohio St. 298, 43 N. E. 862.

Michigan: Hodges v. Buell, 134 Mich. 162, 95 N. W. 1078.

Wisconsin: Western Lime & Cement Co. v. Copper River Land Co., 138 Wis. 404, 120 N. W. 277.

Massachusetts: Fletcher v. Livingston, 153 Mass. 388, 26 N. E. 1001.

Maine: Webber v. Proctor, 89 Me. 404, 36 Atl. 631.

Montana: Hollensteiner v. Missoula Lbr. Co., 37 Mont. 278, 96 Pac. 420.

Washington: Lehtonen v. Marysville Water & Power Co., 50 Wash. 359, 97 Pac. 292.

Mississippi: Forest Product & Mfg. Co. v. Buckley, 66 South. 279; Hall v. Eastman Gardiner & Co., 89 Miss. 588, 43 South. 2, 119 Am. St. Rep. 709.

In addition thereto may be cited 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803; Hoit v. Stratton Mills, 54 N. H. 109, 20 Am. Rep. 119; Aldrich v. Wright, 53 N. H. 398, 16 Am. Rep. 339, cited and quoted from in Hoit v. Stratton Mills, above cited; Burkitt v. Wynne, 132 S. W. 821; Adams v. Hughes, 140 S. W. 1163; Rust Land Co. v. Wheeler, 189 Fed. 321, 111 C. C. A. 53; Carter v. Clark & Co., 149 S. W. 278; Goodnough Mercantile Co. v. Galloway (D. C.) 171 Fed. 941; Houston Oil Co. v. Davis, 154 S. W. 337. See Simpkins on Contracts and Sales (Sales of Standing Timber) 839–841.

It is to be noted that high authorities have held that where no size or description is given in the timber deed to determine what trees upon the land are sold, as is the case in the deed under consideration, timber, in such deed, means such trees as are fit to be used on buildings, or other structures requiring lumber. In such deed, the merchantable pine timber then standing and growing upon the land is meant to be conveyed. Broad River Lbr. Co. v. Middleby, 194 Fed. 817, 114 C. C. A. 521.

The authorities cited above, we believe, discuss every phase and perhaps present the thought and expression not only of the courts of the land, but of able attorneys as well, who have given the subject-matter under consideration much careful thought, both pro and con.

For the reasons given, the writer dissents from the majority opinion of the court heretofore rendered in this case.